Gary LAPINSKY, Plaintiff–Appellant,

v.

SECRETARY OF HEALTH & HUMAN SERVICES, Defendant–Appellee.

No. 87–1374.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 17, 1988.
Decided May 16, 1988.

Kevin P. Kales, Miller, Cohen, Martens & Ice, P.C., Southfield, Mich., for plaintiff-appellant.

Gary Maveal, Asst. U.S. Atty., Detroit, Mich., Denise McDuffie Martin, Dept. of HHS, Chicago, Ill., for defendant-appellee.

Before NELSON and NORRIS, Circuit Judges, and SPIEGEL, District Judge.*

PER CURIAM.

Gary Lapinsky appeals the decision of the district court upholding the decision by the Secretary of Health & Human Services, which denied his request for social security disability benefits. That decision held that shotgun wound injuries to Lapinsky's left foot did not meet the requirements of listing 1.13, which requires benefits to be awarded for *"[s]oft tissue injuries of an upper or lower extremity* requiring a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity, and such major function was not restored or expected to be restored within 12 months after onset."* 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.13 (1987). Lapinsky concedes that he is not entitled to benefits on any basis other than listing 1.13 because the evidence demonstrates that he is able to perform his past relevant work and sedentary work. Accordingly, resolution of the appeal turns on the proper construction to be given that listing.

Lapinsky was thirty-three years old at the time of his hearing, and has a high school education. He worked for General Motors in various positions from January 1970 through October 1982, primarily at sit-down jobs. He was laid off from October 1982 until February 1984, when he was offered another job in assembly production, but could not perform the work because it required extensive standing. He has not worked since.

Lapinsky was admitted to the hospital on August 21, 1973, after accidentally shooting himself in the foot. X-rays showed fractures of the first, second, and third metatarsals. Innumerable shotgun pellets were seen in the soft tissues of his foot. He underwent surgery and was discharged on September 8.

Lapinsky was admitted to the hospital again on March 12, 1974, and a second operation was performed. He was discharged on March 17. X-rays revealed shotgun pellets still in his foot, and other extensive injuries. He returned to his job eleven months after his original injury.

He again was admitted to the hospital for surgery on May 1, 1978, due to scar contracture on the sole of his left foot, which caused him gross discomfort in walking. Scar tissue was excised, his long toe was fileted, skin was folded down into the scar as a flap, and the contracture was released. He was discharged on May 26.

After his 1978 surgery, he again returned to work and performed effectively in a sitting position until he was laid off in October 1982. Thereafter, he was treated by Dr. James Schelberg, who noted in a report dated September 17, 1984 that Lapinsky's condition was permanent and had become increasingly symptomatic over the past year. A report by Dr. George Pendy, dated February 28, 1984, diagnosed a disability of the weight-bearing portion of Lapinsky's left foot.

Lapinsky's application for disability insurance benefits was filed on November 16, 1984, alleging a disability commencing on February 15, 1984.

His testimony and medical records demonstrate that his injuries are permanent and painful. He can stand for only fifteen minutes at a time and walk only one or two blocks. He is able to lift fifteen pounds frequently, and twenty pounds occasionally. He watches television, reads, is capable of driving a car, cuts the grass, goes fishing, climbs stairs, needs no assisting devices or braces, and can perform a sit-down

---

* The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation.

job if permitted to remain at his work station without significant walking.

As defined by statute, the term "disability" means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or *can be expected to last for a continuous period of not less than 12 months*." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

Under the regulations, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment, a finding of "disabled" will be made without consideration of vocational factors. 20 C.F.R. § 404.1520(d) (1987).

The Court of Appeals for the Seventh Circuit has concluded that listing 1.13 is:

> directed at the loss of the use of one extremity, not in itself disabling under the regulations, where restoration of function will require repeated staged surgical procedures over a lengthy period, thus making an individual who would otherwise be capable of substantial gainful employment unavailable for work because of these repeated surgical procedures. This interpretation is supported by the phrases "staged surgical procedures" for "salvage and/or restoration."

*Waite v. Bowen,* 819 F.2d 1356, 1359 (7th Cir.1987)

In *Waite,* the claimant argued that his injury satisfied the listing since the major function of his permanently paralyzed arm could not be restored within twelve months. The court noted that interpreting listing 1.13 to cover such an injury would mean that Waite would be able to qualify for benefits under that listing, even though he could not meet the more specific requirements for loss of function of extremities found in listing 1.09.[1] In addition, such an interpretation would also make the

two listings duplicative because a claimant paralyzed in two extremities would qualify under both listings 1.09 and 1.13.

Under listing 1.13, a claimant is deemed disabled as the result of his having been rendered unavailable for employment due to the surgical procedures, when he sustains soft tissue injuries of an extremity which require a series of staged surgical procedures to restore major function of the extremity, and the process has not been completed so as to restore that function within twelve months after onset. In such an event, the claimant is deemed to have been disabled for a continuous period of not less than twelve months. When the claimant is no longer unavailable for employment due to the surgical procedures, he is no longer disabled within the contemplation of listing 1.13.

Because Lapinsky returned to work less than twelve months after his injury, it is clear that his restorative surgery did not render him unavailable for work as required by listing 1.13. The judgment of the district court is affirmed.

---

1. 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.09 reads:

> Amputation of anatomical deformity of (i.e., loss of major function due to degenerative changes associated with vascular or neurological deficits, traumatic loss of muscle mass or tendons and X-ray evidence of bony ankylosis at an unfavorable angle, joint subluxation or instability):
> A. Both hands; or
> B. Both feet; or
> C. One hand and one foot.