902 F.2d 32
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Patty M. COOPER, Plaintiff-Appellant,
v.
Louis M. SULLIVAN, Secretary Department of Health and Human
Services, Defendant-Appellee.
 No. 89-6081.
 United States Court of Appeals, Sixth Circuit.
 May 8, 1990.
 
 Before MERRITT, Chief Circuit Judge, and BOYCE F. MARTIN, Jr. and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Patty M. Cooper, appeals from the decision of the district court affirming the denial by the Secretary of Health and Human Services of her claim for disability insurance benefits and supplemental security income. On appeal, she argues that (1) she should be found disabled pursuant to 20 C.F.R., Part 404, Subpart P, Appendix 1 Sec. 1.13; (2) the administrative law judge (ALJ) did not apply the proper pain standard as set forth in the regulations; and (3) the testimony of the vocational expert could not have constituted substantial evidence. Finding that the Secretary's decision is supported by substantial evidence, we affirm.
 
 I.
 
 2
 The plaintiff was born on March 29, 1966, and was 21 years of age at the time of her administrative hearing. She has a high school diploma, and she has previously worked as a nurse's aide. She claims disability beginning on September 15, 1986, when she suffered an injury to her left knee. She has not been gainfully employed since her injury. Cooper was treated conservatively for several months, during which time she was fitted with a cylinder cast and was advised to use crutches and to elevate her leg as needed. The cast was removed October 8, 1986, and she was instructed to do exercises consisting of straight leg raising with weights. During the fall of 1986, her treating physician, Dr. Robert B. Miller, diagnosed a partial tear of the medial collateral ligament and a possible tear of the anterior cruciate ligament or medial meniscus. Dr. Miller left open the possibility that arthroscopic surgery might be necessary.
 
 
 3
 In early 1987, Cooper continued to complain of pain and instability in her left leg. Dr. Miller performed arthroscopy on the knee on February 6, 1987, at which time he resected the stubs of the anterior cruciate ligament tear. The plaintiff was instructed in a rehabilitation program on February 17, 1987, although she missed her March and April office visits. When she returned to Dr. Miller on May 20, 1987, he observed a three-quarter inch atrophy of the left leg. In June, the atrophy had been reduced to three-eighths inch. Dr. Miller observed that the leg was "still not functioning well, as is expected." (App. 128). However, he noted that the improvement indicated she must be doing her exercises "at least a fair amount...." (App. 128).
 
 
 4
 Cooper then became pregnant and delivered her baby in November 1987. She did not go to the doctor about her knee between June 1987 and January 6, 1988, because she was unable to continue with therapy or to take some pain medications during her pregnancy. When she returned to the doctor on January 6, she was seen by Dr. James R. Wilkinson, one of Dr. Miller's associates. He scheduled her for full surgery, and, on February 25, 1988, the plaintiff's medical meniscus was removed and her anterior cruciate ligament was reconstructed. She was advised to use crutches for three months, to undergo physical therapy, and to wear a brace for an additional three months.
 
 
 5
 In April 1988, Dr. Wilkinson observed that the plaintiff's wounds were well healed, that she had flexibility beyond 90 degrees, and that she was capable of 15 degree extension. She was still complaining of muscle spasms and could not bear her full weight on the left leg. Dr. Wilkinson increased her physical therapy. In May 1988, the plaintiff slipped and suffered a nondisplaced fracture of the right fibular head.
 
 
 6
 Throughout the two years of her treatment, except during her pregnancy, the plaintiff took various medications for pain and for muscle spasms. These medications had to be changed periodically, as she developed tolerances to them.
 
 
 7
 Cooper filed for supplemental security income benefits and disability insurance benefits on April 28, 1987 and May 4, 1987, respectively. Her insured status expired March 31, 1988. The plaintiff's applications were denied initially and upon reconsideration, and she requested a hearing. An ALJ denied benefits after a hearing, and the Appeals Council declined to review the decision. The plaintiff then filed the instant civil action. The district judge adopted the recommendations of a magistrate and affirmed the decision of the Secretary. This timely appeal followed.
 
 II.
 
 8
 On appeal, our review is quite limited. We must affirm the decision of the Secretary if we determine that it was supported by substantial evidence. Substantial evidence has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The plaintiff raised three allegations of error, which we will address seriatim.
 
 
 9
 Cooper first argues that she meets listing 1.13 of 20 C.F.R., Part 404, Subpart P, Appendix 1, which reads:
 
 
 10
 Soft tissue injuries of an upper or lower extremity requiring a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity, and such major function was not restored or expected to be restored within 12 months after onset.
 
 
 11
 Although it is undisputed that the plaintiff suffered a soft tissue injury and that she underwent surgery on two occasions to restore function to her knee, she does not meet the listing. The standard for disability under listing 1.13 was set forth in Lapinsky v. Secretary of Health & Human Services, 857 F.2d 1071 (6th Cir.1988), in which this court held that a claimant will be determined to meet the listing under the following circumstances:
 
 
 12
 [A] claimant is deemed disabled as the result of his having been rendered unavailable for employment due to the surgical procedures, when he sustains soft tissue injuries of an extremity which require a series of staged surgical procedures to restore major function of the extremity, and the process has not been completed so as to restore that function within twelve months after onset....
 
 
 13
 Id. at 1073. The medical evidence in this case does not support the plaintiff's claims of disability. Although she was subject to a reasonable recuperative period following each surgery, there is nothing in the medical reports to indicate that she was totally unable to engage in substantial gainful activity for a continuous period of twelve months. The focus of listing 1.13 is the disabling effect of the surgical procedures, not the pain and inconvenience associated with the soft tissue injury itself.
 
 
 14
 The plaintiff argues in addition that, even if she does not meet listing 1.13, the Secretary should have determined that her injury is medically equivalent to listing 1.13, according to the standards set forth in 20 C.F.R. Sec. 404.1526. According to this section of the regulations, medical equivalency may be found "if the medical findings are at least equal in severity and duration to the listed findings." Id. Contrary to the plaintiff's assertions, the medical evidence does not support her claim of medical equivalence. Nowhere in the medical records do the physicians report that the plaintiff has been unable to perform substantial gainful activity for a continuous period of twelve months.
 
 III.
 
 15
 The plaintiff next challenges the ALJ's determination that she was not disabled by pain. The regulations provide that there must be medical evidence to support the plaintiff's claims of pain. 20 C.F.R. Sec. 404.1529. In Duncan v. Secretary of Health & Human Services, 801 F.2d 847 (6th Cir.1986), this court set forth the standard for the evaluation of disabling pain in social security cases:
 
 
 16
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain....
 
 
 17
 Id. at 853.[1] The plaintiff contends the ALJ failed to apply the above standard, but a review of his opinion reveals that the ALJ did apply the correct analysis in evaluating Cooper's claims of disabling pain. Although the plaintiff testified that she was in constant pain and that she was unable to walk or stand for any length of time, her subjective complaints are not supported by the medical evidence. The medical reports diagnose torn ligaments, which can be very painful, but the records do not indicate that the pain is of the severity and intensity that the plaintiff claims. Furthermore, the affidavits of the plaintiff's family members are not probative, as they do not constitute objective medical evidence.
 
 
 18
 The plaintiff claims the ALJ ruled improperly that her subjective complaints were not entirely credible. It is the ALJ's province to make determinations as to the credibility and veracity of witnesses, and these decisions are to be accorded great deference. Gooch v. Secretary of Health & Human Services, 833 F.2d 589, 592 (6th Cir.1987), cert. denied, 484 U.S. 1075 (1988). We cannot say that the ALJ's determination in this case was incorrect, particularly because the medical evidence does not fully support the plaintiff's statements.
 
 IV.
 
 19
 Despite the lack of clinical evidence to substantiate the plaintiff's claims that she needs to elevate her leg, the ALJ concluded that she would need to elevate her leg occasionally during the workday. Therefore, the plaintiff would be unable to perform a full range of sedentary work, and the plaintiff's case does not fit within the "grid." 20 C.F.R., Part 404, Subpart P, Appendix 2. The ALJ therefore sought the testimony of a vocational expert (VE). The plaintiff maintains that this testimony could not have constituted substantial evidence.
 
 
 20
 When asked to assume the truth of all of the plaintiff's subjective complaints, the VE testified that Cooper would be disabled from all work. The VE was then asked to assume the following: a person of the plaintiff's age, education, and past work experience, who was limited to sedentary work which allowed her to alternate between sitting and standing; who was required to use pain medication; and who needed to elevate her leg occasionally. He responded that the claimant could perform a significant number of jobs in the regional economy, including employment as a ward clerk or unit clerk in the health care industry.
 
 
 21
 The testimony of a vocational expert may constitute substantial evidence if the hypothetical question accurately portrays the plaintiff's individual qualifications and impairments. Varley v. Secretary of Health & Human Services, 820 F.2d 777, 779 (6th Cir.1987). The above hypothetical question certainly reflects the plaintiff's individual situation. Although she has testified that she must keep her leg elevated, the only reference to elevation in the medical records refers to the period immediately following her injury. In addition, there is no objective medical evidence to support her claims that her pain medication affects her ability to concentrate.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 See also McCormick v. Secretary of Health & Human Services, 861 F.2d 998 (6th Cir.1988) (Duncan standard applicable to cases decided after the sunset of the Disability Benefits Reform Act)