32 F.3d 571
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
William J. O'NEILL, Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services, Appellee.
 No. 93-3291.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: May 10, 1994.
Filed: August 15, 1994.
 
 Before McMILLIAN, MAGILL and BEAM, Circuit Judges.
 PER CURIAM.
 
 
 1
 William J. O'Neill appeals from the final order entered in the District Court[1] for the Eastern District of Arkansas, affirming the decision of the Secretary of Health and Human Services to deny O'Neill's application for disability insurance benefits and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. Secs. 416(a), 1381a. For the reasons discussed below, we affirm.
 
 
 2
 O'Neill was born November 25, 1967, completed the twelfth grade in special education classes, and worked for short periods in labor jobs. In July 1990, O'Neill applied for benefits based on right brachial plexus injury, resulting from a July 1989 motorcycle accident which rendered his arm useless, and dyslexia. His application was denied initially and upon reconsideration. At O'Neill's request, an Administrative Law Judge (ALJ) conducted a hearing, at which O'Neill was represented by counsel.
 
 
 3
 At the hearing, O'Neill testified he could no longer do the work he performed in the past because he had no use of his right arm or hand. He had two surgeries on his arm-one following the accident and a nerve transplant in 1990. Doctors told him it would take more than a year for the transplanted nerves from his heel and leg to "take" and grow. He stated that he sometimes loses his balance walking because his heel is numb and he has trouble feeling the ground. O'Neill stated he can make a fist with his hand, but cannot reopen it; he cannot raise his arm in any direction. He wears a sling on his right arm and a brace on his forearm all day; with his good hand he can pick up 25 to 30 pounds. His shoulder injury affects the way he walks. He does not take pain medication, does not often do housework, and cannot ride his motorcycle. (He indicated in a written statement, however, that he can drive a car.) He has trouble zipping his pants and cannot shave; his mother prepares some meals for him. O'Neill stated he has difficulty with reading and writing; he could not work at a self- service gas station collecting money because he has dyslexia and cannot count change. O'Neill's mother stated that her son was periodically depressed or irritable.
 
 
 4
 The medical evidence documented O'Neill's arm injury. O'Neill's treating physicians indicated gradual nerve improvement, but reported that O'Neill continued to have radial nerve palsy and was unable to involve his right hand in any meaningful activity. O'Neill's scores on a psychological screening evaluation showed: a fourth grade reading and comprehension level, indicating inability to learn from a standard textbook or manual; severe handicap for work or training requiring average spelling and writing ability, or computation and measurement skills; and at least average verbal receptive intelligence. The psychologist concluded that, despite his handicap, O'Neill had the potential for training and placement.
 
 
 5
 The ALJ posed the following hypothetical to the vocational expert:
 
 
 6
 [W]e have a 23 year old male individual with-while he has a 12th grade education, he was in special education. That as a result of dyslexia he's functionally illiterate, has a developmental reading disorder, the same with arithmetic, spelling and writing. That this individual suffers an injury to his right upper extremity and that as a result of radial nerve palsy has no use of his right upper extremity. With his left arm if he's able to pick something up using his left hand can pick up 25 to 30 pounds with that hand, or upper extremity.
 
 
 7
 The vocational expert stated that such an individual could not perform O'Neill's past relevant work, but could perform light work involving self-fed automatic machine operations. He stated these jobs required thirty days or less vocational preparation, and there were 2000 to 2500 such jobs in Arkansas. Of the jobs he suggested O'Neill could do, two required mathematical and language development at level one, which was below the fifth grade level.
 
 
 8
 The ALJ concluded that O'Neill was unable to perform his past relevant work, but he retained the residual functional capacity to perform a limited range of light work activity not requiring use of the dominant upper extremity and with certain restrictions due to his learning disorder. The ALJ discounted O'Neill's allegations of pain, noting he did not take pain medication, had no difficulty sleeping, required little assistance in caring for his personal needs, prepared meals, did his own laundry and housecleaning, mowed the lawn, and went shopping. From the total evidence of record, the ALJ concluded the level of pain O'Neill suffered would not be inconsistent with or exacerbated by light work activity. Noting the shift in the burden, the ALJ concluded that on the basis of the vocational expert's opinion there were 2500 jobs in Arkansas not requiring the use of the right upper dominant extremity and with little or no written instructions. Thus, O'Neill was not disabled. The Appeals Council denied further review, and O'Neill sought judicial review. The district court granted the Secretary summary judgment, concluding the decision was supported by substantial evidence on the record as a whole. O'Neill appeals.
 
 
 9
 Although O'Neill suffered a soft tissue injury and underwent surgery to help restore the function in his arm, he does not meet listing 1.13 of 20 C.F.R. Part 404, Subpart P, App. 1,[2] and we reject his argument that his impairment was the medical equivalent. The focus of listing 1.13 is the disabling effect of the surgical procedures, not the pain and loss of function from the injury itself. See Waite v. Bowen, 819 F.2d 1356, 1359 (7th Cir. 1987); see also Lapinsky v. Secretary of Health & Human Servs., 857 F.2d 1071, 1073 (6th Cir. 1988) (per curiam). O'Neill does not contend he is disabled as a result of multiple surgeries, and the record does not indicate that more surgeries are contemplated. In addition, the medical evidence does not support that his injury is medically equivalent to listing 1.13. See 20 C.F.R. Sec. 404.1526(a) (medical findings must at least equal severity and duration of listing).
 
 
 10
 O'Neill asserts that the Secretary's credibility findings were insufficient and that the hypothetical propounded to the vocational expert improperly excluded his pain, depression, irritability, limited range of motion, generalized weakness, and deficiencies in concentration. Upon our review of the record, we conclude that the Secretary adequately discredited O'Neill's allegations of disabling pain. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). Moreover, O'Neill did not list depression on his application for benefits, and he has never been treated or referred for treatment for depression. See Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir. 1993). The hypothetical took into account O'Neill's dyslexia; his developmental reading, arithmetic, spelling, and writing disorders; and his right upper extremity injury. Thus, the hypothetical included all impairments that were supported by substantial evidence. Contrary to O'Neill's other arguments, the Secretary did not err in failing to order a mental-health consultative examination, or to find that the combination of O'Neill's impairments rendered him disabled. We conclude that substantial evidence on the record as a whole supports the Secretary's decision.
 
 
 11
 Accordingly, we affirm the judgment of the district court.
 
 
 
 [1]
 The Honorable H. David Young, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. Sec. 636(c)
 
 
 [2]
 Listing 1.13 provides: "Soft tissue injuries of an upper or lower extremity requiring a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity, and such major function was not restored or expected to be restored within 12 months after onset."