Demeritt v. SSA                    CV-97-575-M    03/26/99

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Michael W. Demeritt,
     Claimant

     v.                                      Civil No. 97-575-M

Kenneth S. Apfel, Commissioner,
Social Security Administration,
     Defendant.


**O R D E R**


Claimant Michael W. Demeritt moves pursuant to 42 U.S.C.
§ 405(g) to reverse the Commissioner's decision denying his
applications for Social Security Disability Insurance benefits
under Title II of the Social Security Act (the "Act"), 42 U.S.C.
§ 423, and Supplemental Security Income disability payments under
Title XVI of the Act, 42 U.S.C. § 1382.  The Commissioner moves
for an order affirming the Commissioner's decision.  For the
reasons that follow, the decision of the Commissioner is vacated
and remanded.


Standard of Review

I.    Properly Supported Findings by the Administrative
      Law Judge ("ALJ") are Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to
enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Secretary [now, the "Commissioner"], with or without remanding
the cause for a rehearing."  Factual findings of the Commissioner
are conclusive if supported by substantial evidence.  See 42

U.S.C. §§ 405(g), 1383(c)(3); <u>Irlanda Ortiz v. Secretary of Health and Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).[1] Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may be substantial evidence supporting the claimant's position. See <u>Gwathney v. Chater</u>, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision."). See also <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See <u>Burgos Lopez v. Secretary of Health & Human Services</u>, 747 F.2d 37, 40 (1st Cir. 1984) (citing <u>Sitar v. Schweiker</u>, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." <u>Irlanda Ortiz</u>, 955 F.2d at 769

-----

[1]Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. <u>Consolo v. Federal Maritime Comm'n.</u>, 383 U.S. 607, 620 (1966).

(citation omitted).  Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings.  See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.    The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove that his impairment prevents him from performing his former type of work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, the claimant is not required to establish a doubt-free claim.  The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence."  See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6. Provided the claimant has shown an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform. See Vazquez v. Secretary of Health and Human Services, 683 F.2d 1, 2 (1st Cir. 1982). If the Commissioner shows the existence of other jobs which the claimant can perform, then the overall burden remains with the claimant. See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from performing past relevant work; and

(5) whether the impairment prevents the claimant from doing any other work.

4

20 C.F.R. § 404.1520. Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

## Background[2]

In 1982, at the age of thirteen, claimant was injured when a gas tank exploded in a hut or play fort in claimant's backyard. Claimant suffered second and third degree burns over 80% of his body. He was admitted to the Shriners Hospital for Crippled Children, in Boston, Massachusetts, a number of times between 1982 and 1989, where he underwent numerous surgical procedures including reconstructive skin grafts.

On March 14, 1991, claimant was examined by Lawrence Gray, M.D. Dr. Gray found that claimant's right hand had normal sensation and motion, except for the thumb, which was fused at the interphalangeal joint at zero degrees. Dr. Gray concluded

---

[2]The background facts are taken from the parties' Joint Statement of Material Facts with some supplementation from the record.

5

that claimant's right hand was "able to function without limitation." (R. at 227.)[3]

Dr. Gray found significant impairment in claimant's left hand, including fusion of the index, middle, ring and little fingers. Dr. Gray concluded that claimant could not hold or carry small objects in his left hand or lift large, heavy objects. Use of claimant's left hand was limited at that time, in Dr. Gray's opinion, to "assistance only." (R. at 223). Dr. Gray opined that additional reconstructive surgery could benefit claimant but "would not significantly improve his function." (R. at 223.) Dr. Gray noted no restrictions on claimant's ability to sit, stand, walk or bend, nor did he conclude that claimant suffered from any restrictions with regard to his right hand.

Dr. Gray examined claimant again on December 17, 1992. He found that claimant's condition had changed very little except for recurrent ulceration of the left elbow and a small ulceration on the left index finger that claimant attributed to a recent attempt to work. Although Dr. Gray noted significant restrictions with claimant's left hand, he believed claimant was "capable of basic work-related activities such as sitting, standing, walking and bending." (R. at 224).

On October 21, 1993, claimant was again seen by Dr. Gray, who reported "essentially no change" in claimant's condition from the previous two visits. (R. at 222.) Dr. Gray noted continued

_____

3Citations to the record are to the certified transcript of record filed by the Commissioner with the court.

6

breakdown of the skin on claimant's left elbow and ulcerations on the left index finger with use of the hands. Dr. Gray reported no limitations on standing, sitting or walking, but noted a restriction on lifting and carrying all but very light objects with his left upper extremities.

Claimant applied for SSI disability payments on June 27, 1990. The application was denied and claimant did not appeal. The ALJ declined to reopen that decision and it is not now before the court.

On September 11, 1992, claimant filed applications for both disability insurance benefits and SSI payments,[4] alleging that he first became unable to work because of his disabling condition on February 15, 1991. Claimant described his impairment in his application for SSI payments as "complications from burns; hand [and] leg problems." (R. at 174.). Claimant's applications were denied both initially and on reconsideration. A hearing was held on December 19, 1994, before ALJ Thomas H. Fallon, who denied claimant's applications on January 27, 1995. On appeal to the Appeals Council of the Social Security Administration, the ALJ's decision was vacated and the case remanded with instructions to hear evidence from a vocational expert.

_____

4Claimant's application for SSI payments is dated August 3, 1992, but stamped as received at the Portsmouth, New Hampshire, Social Security Administrative Office on September 11, 1992. (R. at 174.) Although the ALJ's decision treats the SSI application as filed on August 3, 1992, the parties state in their Joint Statement of Material Facts that both applications were filed on September 11, 1992. For purposes of this order, the court accepts the date provided in the joint statement of material facts.

Following another hearing on March 4, 1996, at which claimant and a vocational expert testified, the ALJ again denied claimant's applications. The Appeals Council denied claimant's request for review and the ALJ's decision thus became the final decision of the Commissioner.

The ALJ's decision described claimant as a then 27-year-old individual with less than a high school education and past relevant work experience as a dishwasher, framer, painter and gas station attendant and manager. The ALJ found that claimant had not engaged in any substantial gainful activity since he stopped working, allegedly due to his impairments, on February 15, 1991. The ALJ also found that claimant had a severe impairment or combination of impairments, namely "status post extensive burns with residuals, left hand restrictions, back pain and foot drop,[5] impairments which cause significant vocationally relevant limitations." (R. at 18.) The ALJ concluded, however, that while claimant's impairments were severe, they did not meet or equal the criteria of any listed impairment.

The ALJ then found that claimant had the residual functional capacity to meet the exertional requirements of a less than full range of light work and a full range of sedentary work. The ALJ noted, however, that claimant had non-exertional limitations, "impos[ing] a moderate limitation regarding dust, fumes or other irritants, changes in temperature and humidity, exposure to

_____

5The ALJ found that claimant has "right foot drop as a result of a surgical procedure where a nerve was severed." (R. at 18.)

heights, and noise," that slightly reduced his ability to perform light and sedentary work. (R. at 20.) The ALJ determined that because claimant was required in his previous work to lift up to 20 pounds, he was not capable of returning to his former employment. He concluded, however, that claimant did have the capacity to make an adjustment to employment that exists in significant numbers in the national economy. The ALJ also found that because claimant's capacity for light and sedentary work was not significantly reduced by his non-exertional limitations, a finding of "not disabled" could be reached under the Medical-Vocational Rules 202.17 or 201.24.

## Discussion

Claimant argues that the ALJ erred in (1) finding that claimant's impairments did not meet or equal the criteria of a listed impairment; (2) finding that claimant's capacity for light work had not been significantly diminished and that there are a significant number of jobs claimant can perform; and (3) finding that claimant's testimony was not credible.

Claimant argues that his impairments meet or equal in severity the impairments listed in 8.00 and 1.13 in 20 C.F.R. Part 404, Subpart P, Appendix 1. The burden is on claimant to show that his impairment meets or equals a listed impairment. Torres v. Secretary of Health and Human Services, 870 F.2d 742, 745 (1st Cir. 1989). Claimant cites the following portion of section 8.00:

> Skin lesions may result in a marked, long-lasting impairment if they involve extensive body areas or

9

critical areas such as the hands or feet and become resistant to treatment. These lesions must be shown to have persisted for a sufficient period of time despite therapy for a reasonable presumption to be made that a marked impairment will last for a continuous period of at least 12 months.

Claimant argues that he meets this description because he suffered skin lesions, in the form of second and third degree burns, over 80% of his body, including over the critical area of his hands, and that this impairment will last for a continuous period of at least 12 months.

Claimant's argument fails, however, because section 8.00 is not itself a listed impairment. Rather it is the introductory section for the listed impairments dealing with conditions of the skin. Claimant has not shown, nor does he argue, that he meets any of the listed impairments following this general introduction.

Claimant also cites the following portion of section 8.00, which directs him to a different category of impairments: "When skin lesions (including burns) are associated with contractures or limitation of joint motion, that impairment should be evaluated under 1.00ff." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.00(B). He then argues that he meets or equals the listed impairment 1.13, which provides:

> Soft tissue injuries of an upper or lower extremity requiring a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity, and such major function was not restored or expected to be restored within 12 months after onset.

10

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.13.  Claimant argues that he meets or equals this listing because his injuries required a series of surgical procedures within 12 months after onset and still require further surgery as noted by Dr. Gray.

Listing 1.13 has been interpreted as follows:

[I]t is directed at the loss of the use of one extremity, not in itself disabling under the regulations, where restoration of function will require repeated staged surgical procedures over a lengthy period, thus making an individual who would otherwise be capable of substantial gainful employment unavailable for work because of these repeated surgical procedures.

Waite v. Bowen, 819 F.2d 1356, 1359 (7th Cir 1987).  See also Lapinsky v. Secretary of Health and Human Services, 857 F.2d 1071, 1073 (6th Cir. 1988).  Thus, "[t]he listing provides for disability benefits during the time an individual is going through several separate but progressive surgical procedures and recovery from those procedures."  Holden v. Secretary of Health and Human Services, No. 90-CV-40329-FL., 1992 WL 120390 at *3 (E.D. Mich. Jan. 23, 1992).  That is not claimant's situation.  The series of surgical procedures performed on claimant at Shriners Hospital was completed in 1989.  The impairment for which claimant now seeks benefits began on February 15, 1991, the date he alleges he first became unable to work because of his disabling condition.  The record reveals no surgical procedure performed on or scheduled after February 15, 1991, nor does it indicate that the further surgery suggested by Dr. Gray would render claimant unable to work for a period of 12 months.  See Holden, 1992 WL 120390 at *2 (noting that it is also crucial that

11

the surgical process last for at least a twelve month period.)[6] The ALJ's determination that claimant's impairment does not meet or equal[7] a listed impairment is supported by substantial evidence.

Having found that claimant's condition did not meet or equal a listed impairment, the ALJ was next required to assess claimant's residual functional capacity "to determine the effects of the impairment, including any additional limitations imposed by pain, on the claimant's capacity to perform former work or other work." Avery, 797 F.2d at 28.

> When a claimant complains that pain or other subjective symptoms are a significant factor limiting his or her ability to work, and those complaints are not fully supported by medical evidence contained in the record, the ALJ must consider additional evidence, such as the claimant's prior work record; daily activities; location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, past or present; treatment, other than medication, received for relief of pain or other symptoms, past or present; any measures used, past or present, to relieve pain or other symptoms; and other factors concerning functional limitations and restrictions due to pain.

Mandziej v. Chater, 944 F. Supp. 121, 133 (D.N.H. 1996).

Claimant argues that the ALJ erred in finding his testimony regarding his pain and physical limitations not credible. Although the ALJ's credibility determinations are normally owed

---

[6]Such surgical procedure would apparently also not qualify under § 1.13 because it would not have taken place within twelve months after onset.

[7]As the court in Holden noted, "[t]here is no medical equivalent for the staged surgical process called for by listing 1.13." Holden, 1992 WL 120390 at *3.

12

considerable deference, see Dupuis v. Secretary of Health and Human Services, 869 F.2d 622, 623 (1st Cir. 1989), those determinations "must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." Da Rosa, 803 F.2d at 26.

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Social Security Ruling ("SSR") 96-7p (July 2, 1996). The ALJ noted that claimant alleged he could not work because his hands hurt and would routinely crack and bleed, and he has little motion in, and cannot lift heavy objects with, his left, non-dominant hand. The ALJ found, however, that "[t]he claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the claimant's own description of his activities and life style, the degree of medical treatment required and the findings made on examination." (R. at 23.)

Specifically, the ALJ noted that in 1992, claimant reported engaging in the following activities: shopping, drawing, sketching, taking care of his cat, building models, watching

13

television and movies, listening to music, visiting friends, going for walks and riding a bike. In 1996, claimant testified that he no longer built models or rode his bike and was unable to lift and place items in a grocery cart due to weakness in his hands. The ALJ noted, however, that claimant took no prescription medication for his symptoms or pain, and has not pursued the further surgery suggested by Dr. Gray. Although claimant stated that he could not afford the surgery, the ALJ noted that claimant has a history of not following his physicians' advice, and found that he would not seek medical treatment even if he could afford it. The ALJ also concluded that because Dr. Gray prescribed no medication for claimant's skin ulcerations, they must not be severe.

The ALJ's specific findings are not supported by substantial evidence. First, the ALJ credits claimant's accounts of his activities in 1992, but discounts claimant's 1996 testimony that pain and weakness in his hands had forced him to curtail those activities. The ALJ appears to have discounted claimant's later testimony because claimant has allegedly failed to obtain medical treatment for his symptoms.

The Commissioner argues that the ALJ is allowed to "view . . . gaps in the medical record as 'evidence,'" Irlanda Ortiz, 955 F.2d at 769, and asserts that claimant received no treatment for his symptoms after 1989. The Commissioner overlooks, however, claimant's effort to obtain medical treatment in June of 1993, after the statement of claimant's activities that the ALJ

14

credited; he complained about precisely the same symptoms he now describes. A note in claimant's record from Shriners Burns Institute, dated June 23, 1993, states:

> Complains of chronic problems [with] pain, tenderness, tightness, both hands [with] stiff joints. Unable to work at many tasks [secondary] to these problems. Now overage [and] cannot be Rx'd at [Shriners Burns Institute]. Will refer to [Massachusetts General Hospital] hand clinic [if desires?][8] Close record.

(R. at 199.) The note also partly corroborates claimant's testimony that he has not pursued further surgery because he cannot afford it, and is now too old to obtain free treatment at Shriners. (R. at 93.)

The ALJ determined that "the weight of the evidence does not support a finding that the claimant would seek medical treatment if he had more finances." (R. at 20.) The ALJ based this determination in part on claimant's history of not following his physicians' advice. Aside from a few missed appointments and an apparent failure to give up smoking, however, the record discloses only two notations, back in 1983, suggesting claimant failed to comply with a prescribed physical therapy regimen (R. at 189, 191.) The court notes that in 1983, claimant was a teenager (15 years old). Claimant's lack of diligence in strictly adhering to physical therapy requirements when he was fifteen says nothing meaningful about whether at the age of thirty, he would likely fail to follow a doctor's advice.

---

8The note is handwritten and nearly illegible in places.

15

Finally, the ALJ concluded that because Dr. Gray did not prescribe medication for claimant's skin ulcerations, they must not be severe. However, the medical record indicates that claimant had been advised to treat this longstanding problem with what appear to be over-the-counter medications, such as neosporin (R. at 195) and bacitracin (R. at 198). Cf. SSR 96-7p (listing, as a possible "good reason[]" for a claimant not seeking further medical treatment, that symptoms "may be relieved with over-the-counter medications"). Thus, Dr. Gray's failure to prescribe controlled medication does not necessarily support the conclusion that claimant's symptoms are not serious.

The ALJ's credibility determination may well be perfectly solid, after all he was able to see and hear claimant and make an informed judgment about possible exaggeration. The difficulty here is that the reasons given for the ALJ's credibility finding are actually contradicted by the record in substantial part, and this court cannot glean from the decision below whether controlling weight was given to an articulated factor contradicted by the evidence. Thus the ALJ's decision is vacated and remanded for further proceedings.

<u>Conclusion</u>

For the foregoing reasons, the claimant's motion for order reversing the decision of the [Commissioner] (document no. 4) is granted and the Commissioner's motion for order affirming the decision of the Commissioner (document no. 6) is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the case is

16

remanded to the ALJ for further proceedings, during which claimant will perhaps better document the status of his residual functional capacity and more concretely establish his claim of debilitating pain.  In any event, removal will also provide an opportunity to review the record, resolve some apparent evidentiary inconsistencies, and clarify the factors considered, and weight given those factors, relative to redetermination of the claims presented.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 26, 1999

cc:  Bradley M. Lown, Esq.
     David L. Broderick, Esq.

17