**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

WILLIAM D. AVENETTI,
            *Plaintiff-Appellant,*

v.

JOANNE B. BARNHART,
Commissioner of the Social
Security Administration,
            *Defendant-Appellee.*

No. 04-15813

D.C. No.
CV-02-01436-MS

OPINION

Appeal from the United States District Court
for the District of Arizona
Morton Sitver, Magistrate Judge, Presiding

Argued and Submitted
February 17, 2006—San Francisco, California

Filed August 8, 2006

Before: J. Clifford Wallace, Michael Daly Hawkins, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Wallace

## COUNSEL

Mark Caldwell, Caldwell & Ober, P.L.L.C., Phoenix, Arizona, for plaintiff-appellant William D. Avenetti.

Donna M. Montano, Assistant Regional Counsel, San Francisco, California, for the defendant-appellee.

## OPINION

WALLACE, Senior Circuit Judge:

Avenetti appeals from the summary judgment entered in favor of the Commissioner of the Social Security Administration (Commissioner). He challenges the district court's interpretation of the then-applicable Medical Listing 1.13, 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.13 (1999) (Listing 1.13). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.[1]

### I.

Avenetti served in the United States Navy and later worked as a laborer until August 21, 1995, when he was involved in

---

[1] Avenetti's other arguments are addressed by the accompanying memorandum disposition.

a serious automobile accident. Among other injuries, Avenetti suffered third-degree burns over approximately 37% of his body.

Avenetti was hospitalized for two months during which he underwent several surgical operations, including multiple skin grafts. He was then transferred to a rehabilitation unit for one month.

After discharge, Avenetti was under the care of a specialist in physical medicine and rehabilitation. Avenetti required two additional inpatient reconstructive procedures and later underwent two additional procedures on an outpatient basis.

On August 8, 1996, the Social Security Administration (SSA) concluded that Avenetti was disabled and made its finding retroactive to the date of the accident. The SSA concluded that his condition met Listing 1.13.

On October 14, 1997, the SSA reviewed Avenetti's status pursuant to 20 C.F.R. § 404.1594, and concluded that he had recovered sufficiently such that he was no longer disabled. The SSA notified Avenetti of its conclusion on November 1, 1998, and stated that his benefits would expire on January 1, 1999.

Avenetti filed a request for reconsideration and, after a hearing, a disability hearing officer found that Avenetti was not disabled. At Avenetti's request, an additional hearing was conducted before an Administrative Law Judge (ALJ) on August 4, 1999, resulting in a determination that Avenetti was not disabled as of January 1, 1999.

After an unsuccessful appeal to the Appeals Council, Avenetti filed an action in the district court. The district court entered summary judgment in favor of the Commissioner, and Avenetti filed a timely appeal.

## II.

**[1]** The central issue in this appeal is the proper interpretation of the then-applicable Listing 1.13, which read:

> Soft tissue injuries of an upper or lower extremity requiring a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity, and such major function was not restored or expected to be restored within 12 months after onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.13.

The district court adopted the interpretation of three circuits, *see Knepp v. Apfel*, 204 F.3d 78, 86 (3d Cir. 2000); *Lapinsky v. Secretary of Health & Human Services*, 857 F.2d 1071, 1073 (6th Cir. 1988); *Waite v. Bowen*, 819 F.2d 1356, 1359 (7th Cir. 1987), and held that this provision requires disability that is caused by the restorative surgical procedures. Avenetti challenges this interpretation and urges us to adopt an analysis similar to that of the Eighth Circuit, which has no such requirement. *See Senne v. Apfel*, 198 F.3d 1065, 1067-68 (8th Cir. 1999).

We review a district court's judgment upholding the Commissioner's denial of benefits de novo. *See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). Our review of the ALJ's interpretation is a more complicated issue. We have previously accorded deference to SSA interpretations, titled Social Security Rulings (SSRs). *See*, *e.g.*, *Holohan v. Massanari*, 246 F.3d 1195, 1203 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991) (en banc). SSRs reflect the official interpretation of the SSA and are entitled to " 'some deference' as long as they are consistent with the Social Security Act and regulations." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005) (citation omitted).

We have not specifically addressed whether deference applies to an ALJ's interpretation of a disability listing. The Commissioner, however, has not argued that any deference applies to the ALJ's interpretation. Therefore, this potential argument is waived. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("on appeal, arguments not raised by a party in its opening brief are deemed waived"). We therefore review the interpretation of Listing 1.13 de novo, as it is a question of law.

## III.

**[2]** The Third, Sixth and Seventh Circuits have adopted the same interpretation of Listing 1.13, and each did so without according any deference to the SSA's or ALJ's legal interpretation. *See Knepp*, 204 F.3d at 86-87; *Lapinsky*, 857 F.2d at 1073; *Waite*, 819 F.2d at 1359. The Seventh Circuit was first to interpret the provision and held that the listing is "directed at the loss of the use of one extremity, not in itself disabling . . . , where restoration of function will require repeated staged surgical procedures . . . , thus making an individual who would otherwise be capable of substantial gainful employment *unavailable for work because of these repeated surgical procedure*s." *Waite*, 819 F.2d at 1359 (emphasis added). The court reasoned that "the purpose of listing 1.13 is to allow a period of recovery for surgical restoration of an impaired limb, the functional loss of which is implicitly regarded as not disabling." *Id.* at 1360.

**[3]** The Sixth Circuit adopted the same analysis shortly thereafter. It held that "[u]nder listing 1.13, a claimant is deemed disabled as a result of his having been rendered unavailable for employment due to the surgical procedures . . . ." *Lapinsky*, 857 F.2d at 1073. It further held that "[w]hen the claimant is no longer unavailable for employment due to the surgical procedures, he is no longer disabled within the contemplation of listing 1.13." *Id.*

**[4]** More recently, the Third Circuit has adopted the same interpretation in *Knepp.* 204 F.3d at 86-87. It held that the listing "addresses only those situations in which the surgical procedures themselves contribute to the claimant's inability to work . . . ." *Id.* at 87.

The Eighth Circuit, by contrast, rejected a requirement that surgery render the patient unavailable for work, and instead only required that the surgeries were "staged" and they "were undertaken solely for the purpose of relieving his pain, or for the purpose of restoring strength and function . . . ." *Senne*, 198 F.3d at 1068.

Avenetti's proposed interpretation, relying on *Senne*, raises two highly problematic issues. First, as the Seventh Circuit reasoned, "[i]f the regulations . . . were intended to grant benefits to one who has lost the use of an extremity for twelve months or more, then the wording of the listing would have been that simple." *Waite*, 819 F.2d at 1359. Moroever, that interpretation would render Listing 1.13 duplicative of Listing 1.09, which addresses loss of function of extremities. *See id.*

Second, under Avenetti's interpretation, once a person qualifies for Listing 1.13, he or she will be entitled to lifetime disability benefits, no matter how much improvement occurs. As such, the disability finding would be permanent because no causal relationship between surgery and disability would be required, nor would there be any requirement that the claimant be actually impaired in the slightest after the original twelve-month period. It is highly implausible that the SSA meant to create a perpetual entitlement to disability benefits regardless of actual impairment. Avenetti has not provided any limiting principle that would prevent Listing 1.13 from automatically providing lifetime benefits under his interpretation.

**[5]** We are persuaded by the reasoning of the Third, Sixth, and Seventh Circuits, and hold that Listing 1.13 requires that

a person be rendered unable to work because of staged surgical procedures. Listing 1.13 is directed towards individuals who, while otherwise not qualifying as disabled, are unable to work because of their need for staged restorative surgeries. "When the claimant is no longer unavailable for employment due to the surgical procedures, he is no longer disabled within the contemplation of listing 1.13." *Lapinsky*, 857 F.2d at 1073.

**[6]** In light of our interpretation of Listing 1.13, there is substantial evidence to support the ALJ's finding that Avenetti was not disabled as of January 1, 1999. Although Avenetti had two surgical procedures on an outpatient basis after that date, there is no evidence, or indeed even argument, that they were disabling. We therefore affirm summary judgment in favor of the Commissioner.

**AFFIRMED.**