

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-8-2000

# Warner-Lambert Co. v. Breath Asure Inc.

Precedential or Non-Precedential:

Docket 98-6502

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Warner-Lambert Co. v. Breath Asure Inc." (2000). *2000 Decisions.* Paper 24.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/24

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 8, 2000

No. 98-6502

WARNER-LAMBERT COMPANY,

      Appellant,

v.

BREATHASURE, INC.,

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
Civil No.: 98-cv-01940
District Court Judge: Honorable John W. Bissell

Argued: May 21, 1999

Before: McKEE, RENDELL, Circuit Judges and GARTH,
Senior Circuit Judge

(Filed: February 8, 2000)

      Thomas C. Morrison, Esq. (Argued)
      Eugene M. Gelernter, Esq.
      Kathleen H. Dooley, Esq.
      Shanley & Fisher, P.C.
      Patterson, Belknap, Webb &
       Tyler, LLP
      1133 Avenue of the Americas
      New York, NY 10036

       Attorneys for Appellant


      Joel M. Wolosky, Esq. (Argued)
      Sharon H. Stern, Esq.
      Parker, Chapin, Flattau &
       Klimpl, LLP
      1211 Avenue of the Americas
      New York, NY 10036

      Mark I. Peroff
      Trademark and Patent Counselors of
       America, P.C.
      915 Broadway
      New York, NY 10010

Attorneys for Appellee

OPINION OF THE COURT

McKEE, Circuit Judge.

Warner-Lambert Company sued BreathAsure, Inc. under S 43(a) of the Lanham Act based upon Warner-Lambert's belief that the trade names, "BreathAsure" and "BreathAsure-D," for certain of defendant's breath fresheners constituted a false and misleading claim that gave BreathAsure an unfair advantage in the sale of those products, and injured Warner-Lambert in the sale of its breath freshening products. On the third day of the ensuing trial, BreathAsure stipulated that scientific evidence established that its "BreathAsure" products were not effective against bad breath. As a result, the District Court permanently enjoined BreathAsure from continuing to advertise that those products were effective. However, the court refused to enjoin use of the trade names "BreathAsure" or "BreathAsure-D" because the court concluded that Warner-Lambert had not demonstrated that it was likely to be harmed by the continued use of those product names. This appeal followed.[1] For the reasons that follow, we will reverse.

_____

1. "We review the District Court's conclusions of law in a plenary fashion, its findings of fact under a clearly erroneous standard, and its decision to grant or deny an injunction for abuse of discretion." American Telephone & Telegraph Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994), cert. denied, 514 U.S. 1103 (1995) (quoting Johnson & Johnson-Merck Consumer Pharmaceuticals, Inc. v. Rhone-Polenc Rorer Pharmaceuticals, Inc., 19 F.3d 125, 127 (3d Cir. 1994)).

I.

Warner-Lambert is a leading manufacturer of several well-known breath freshening products, including Certs, Clorets, Listerine, and Dentyne. Those products are in the form of gum, mints, and mouthwash. BreathAsure, Inc. also markets several breath freshening products, including BreathAsure and BreathAsure-D, which are the subjects of this dispute. BreathAsure's breath freshening products are capsules that are swallowed. For several years prior to this lawsuit, BreathAsure, heavily promoted its BreathAsure products as being effective against bad breath. The theme of much of the advertising was that the capsules worked effectively at the source of bad breath and were, therefore,

superior to products that simply masked or covered bad breath such as gum, mints and mouthwash. One such ad contained a series of photographs depicting food, a couple appearing to share a tender moment, and a package of BreathAsure. The following captions appear beneath those images: "if you eat and we all do," "and you want to get close," "you need BreathAsure the internal breath freshener," "BreathAsure for the confidence of clean fresh breath." The label on the package of BreathAsure in this ad read: "The internal Breath Freshener All-Natural", and a banner across the front of the packaging proclaimed:"lasts & lasts & lasts." Much of defendant's advertising tells the reader to "stop masking bad breath" with products that "just cover-up bad breath." Another of defendant's advertisements contained an image of a woman with the bottom of her sweater pulled up over her navel and the legend: "Fight the problem at its source" with a dotted arrow pointing to the woman's stomach. Plaintiff's Exhibit 101J.

The National Advertising Division of the Better Business Bureau investigated defendant's advertising and concluded that defendant's claim that BreathAsure and BreathAsure-D were effective breath fresheners was not supported by any reliable scientific evidence. Accordingly, it recommended that defendant discontinue or substantially modify its ads for its breath fresheners.2  App. 133, A.138-39, A.185, A.189.

_____

2. Warner-Lambert now represents without contradiction that the scientist whose studies defendant relied upon in opposing the National

3

Based upon the unsupported claims made in advertising that BreathAsure and BreathAsure-D were effective breath fresheners, Warner-Lambert filed the instant complaint under S 43(a) of the Lanham Act, 15 U.S.C.S 1125(a), seeking to permanently enjoin BreathAsure from advertising that its BreathAsure products are effective breath fresheners. Warner-Lambert also sought a permanent injunction against use of the name "BreathAsure" based upon its contention that the name itself communicates a false and misleading message. Warner-Lambert did not seek monetary damages. Despite BreathAsure's claims that its capsules are superior to products that merely mask bad breath, evidence produced during the instant litigation established that bad breath originates in the mouth, not in the stomach. Therefore, Warner-Lambert maintains that effective breath freshening products must either mask offensive oral odors, or attack bacteria in the mouth. A.180.

On the third day of the bench trial on Warner-Lambert's complaint, BreathAsure stipulated that "[s]cientific studies presented in this case demonstrate that BreathAsure and BreathAsure-D are not effective in reducing bad breath . . . ." BreathAsure also consented to an injunction prohibiting it from advertising that its capsules were effective breath fresheners. However, BreathAsure continued to resist any injunction against the use of the trade names "BreathAsure" and "BreathAsure-D," and insisted that those names did not violate the Lanham Act.

At the completion of the bench trial, the District Court issued an oral opinion in which it held that the trade names misrepresented the products' qualities. The court stated:

> The Court determines that the name Breath Asure, particularly given its contemplated future use for defendant's products, is indeed deceptive and a

_____

Advertising Division's recommendation that the advertising be modified or discontinued has since disavowed his own studies insofar as they supported defendant's claim that an ingestible capsule could combat offensive breath odor. See Br. for Appellant at 9.

4

> misrepresentation of the products' qualities. It implies assurance where there is no basis for it. It relates to breath; and, together with a residuum of past ads, although discontinued, will inform the market and prospective consumers that it is designed to enhance breath quality and limit offensive odors. While discontinuance of the ads that are the subject of the consent injunction here is and will be significant, particularly in terms of any likelihood of future injury to the plaintiff, that residual impact will be enough to generate product recognition, particularly when the name Breath Asure continues to be used.
>
> Said somewhat otherwise, I do not accept the testimony of [defendant's main witness] that in all likelihood the future use of Breath Asure, alone or in connection with otherwise benign descriptions, could itself lead to a multiple number of conclusions as to what the product is . . . . Breath Asure's campaign over the last six years has been successful in producing sufficient recognition for the term Breath Asure that its continued use in the market will present to the public once again a product with assurance of breath quality. Accordingly, Breath Asure is deceptive, advising the

consumer that there is a sound basis for assurance that this product will freshen or destroy odors in ones breath when there is inadequate support for such a claim. That element of the claim remaining in this case by the plaintiff has been established.

A.13-14.

The court also found that "[t]he [Warner-Lambert and BreathAsure] products are in competition in a general sense in the breath freshener market." App. at A-25. However, despite finding that defendant's claims for its products were misleading, the court refused to enjoin the use of the two trade names. The court based its refusal upon two cases decided by the Court of Appeals for the Second Circuit: Johnson & Johnson v. Carter-Wallace, 631 F.2d 186 (2d Cir. 1994), and Ortho Pharmaceutical Corporation v. Cosprophar, Inc., 32 F.3d 690 (2d Cir. 1994). The court refused to presume injury to Warner-Lambert based upon defendant's deceptive product name and its

finding that Warner-Lambert and BreathAsure were in "competition in a general sense." Instead, the court concluded that Warner-Lambert had not met its burden of establishing the likelihood of future injury from continued use of the product name. The court reasoned that BreathAsure and BreathAsure-D

are in competition [with Warner-Lambert's products] in a general sense in the breath freshener market. But BreathAsure, in this Court's view and as established in this record, I determine is essentially a niche production in light of the manner in which it's consumed and the problems which it is supposed to address. It's in a niche essentially where the plaintiff's products don't go both physically and otherwise.

This continues to support the Court's determination that the greater likelihood of the side by side marketing of BreathAsure and the plaintiff's products is that consumers will, as they have in the past, add BreathAsure as a compliment to the plaintiff's products, not a substitute, thereby lessening any injury to the plaintiff.

A.25-6.

The court relied upon the following in reaching its findings: (i) sales trends for the BreathAsure products had decreased in recent years; (ii) Warner-Lambert's sales of Listerine, Certs, and Dentyne had increased; (iii) Warner-

Lambert had not called any consumer witnesses to testify that they had switched from using Warner-Lambert's breath-freshening products to BreathAsure's products; (iv) Warner-Lambert had not presented consumer surveys indicating the future impact of BreathAsure products on Warner-Lambert's sales; and (v) inasmuch as BreathAsure's products were "niche products" that were not used in the same manner as Warner-Lambert's products, there was no basis to conclude that consumers were likely to switch products rather than simply use "BreathAsure" to supplement Warner-Lambert's products.

On appeal, Warner-Lambert contends that the District Court was clearly erroneous in its findings, and that it

erred in not satisfying the necessary burden to enjoin use of those trade names.

## II.

Our analysis must necessarily begin with Section 43(a)(1)(B) of the Lanham Act which provides in relevant part:

> (a)(1) Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any . . . false or misleading description of fact, or false or misleading representation of fact, which --
>
> . . . (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her . . . goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. S 1125(a)(1)(B). To establish a Lanham Act claim based on a false or misleading representation of a product the plaintiff must show:

> 1) that the defendant has made false or misleading statements as to his own product [or another's];
>
> 2) that there is actual deception or at least a te ndency to deceive a substantial portion of the intended audience;

3) that the deception is material in that it is li kely to influence purchasing decisions;

4) that the advertised goods traveled in interstat e commerce; and

5) that there is a likelihood of injury to the pla intiff in terms of declining sales, loss of good will, etc.

Johnson & Johnson–Merck Consumer Pharmaceuticals Co. v. Rhone–Poulenc Rorer Pharmaceuticals, Inc., 19 F.3d 125,

129 (3d Cir. 1994)(quoting U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 922–23 (3d Cir. 1990)). However, "[i]f a plaintiff proves a challenged claim is literally false, a court may grant relief without considering whether the buying public was misled." Johnson & Johnson–Merck, 19 F.3d at 129. See also Castrol, Inc. v. Pennzoil Co., 987 F.2d 939, 943 (3d Cir. 1992).

In Parkway Baking Co. v. Freihofer Baking, Co., 255 F.2d 641, 649 (3d Cir. 1958) we held that a plaintiff seeking damages under S 43(a) must establish customer reliance but need not quantify loss of sales as that goes to the measure of damages, not plaintiff's cause of action. 255 F.2d at 648. Significantly for our purposes here, we also stated:

> [i]n cases of injunction, however, there seems to be no requirement that purchasers actually be deceived, but only that the false advertisements have a tendency to deceive. This seems to be the result desired by Congress in that Section 43(a) confers a right of action upon any person who `believes that he is or is likely to be damaged' by defendant's practices. While it would be going too far to read the requirement of customer reliance out of this section so far as damages are concerned, we believe that this is a recognition that, as with most equitable relief by way of injunction, Section 43(a) may be asserted upon a showing of likelihood of damage without awaiting the actuality.

Parkway Baking Co., 255 F.2d at 649 (emphasis added).

Here, Warner–Lambert first argued that the District Court applied the wrong standard of proof in determining if it had established the necessary "likelihood of injury." Warner–Lambert argues that, having found that the "BreathAsure" product name was deceptive and that the parties' products compete, the District Court necessarily should have concluded that Warner–Lambert had a reasonable basis to

believe that it was likely to be injured if the defendant continued referring to its products as "BreathAsure." The District Court refused to infer a likelihood of injury, and instead required the plaintiff to present "some persuasive evidence" of likely damage.

The District Court compared the proof presented by Warner-Lambert here with the proof presented by the plaintiffs in Ortho and Carter-Wallace and concluded that Warner-Lambert's failure to produce evidence of declining market share, consumer surveys or evidence of consumers using defendant's products instead of Warner-Lambert's, was fatal to Warner-Lambert's claim insofar as Warner-Lambert sought to enjoin defendant's use of its trade names. See A.22-24. The court stated:

> [l]et us take a look at some of the methods of proof employed in Johnson & Johnson.3  Now, surely they're not exclusive and the mere failure of all or some of them to be present in the case at bar is not itself fatal. But they are indicative at least of the type of evidence upon which this claim might be sustained that are absent here.

A.22. The court then referred to the consumer surveys, and consumer testimony that was introduced in Johnson & Johnson v. Carter-Wallace. The court concluded,"[t]here is no probative, certainly not adequate probative, evidence of consumer surveys once again to indicate a likely damage or impact upon either the sales or market shares of the plaintiff's products by the continuation of the defendant's product merely aided by the trade name Breath Asure." A.24.

Similarly, the court referred to Ortho as follows:

> The Ortho case also emphasized such things as the absence of market studies and direct competitive advertising, and the conclusion that people would not necessarily switch as opposed to merely supplementing their repertoire of products. So those similarities between the deficient proofs in Ortho and the deficiencies of the present proofs exist.

---

3. The District Court referred to Johnson & Johnson v. Carter-Wallace, 631 F.2d 186 (2d Cir. 1980) as "Johnson & Johnson," and "J&J." However, we refer to it here as "Johnson & Johnson v. Carter-Wallace" or "Carter-Wallace" so as to distinguish it from our holding in Johnson & Johnson-Merck v. Rhone-Poulenc Rorer Pharmaceuticals, 19 F.3d 1125 (3d Cir. 1994).

A.24-5. Inasmuch as the District Court based its analysis on Johnson & Johnson v. Carter-Wallace and Ortho, rather than our holding in Parkway Baking, we will discuss those two opinions of the Second Circuit Court of Appeals. We believe the District Court misconstrued the import of the analysis in both of those cases.

In Carter-Wallace, plaintiff manufacturer of Baby Oil and Baby Lotion sued defendant manufacturer of "NAIR" - a depilatory product that was aggressively advertised as containing "baby oil." The District Court granted a defense motion to dismiss following a bench trial based upon its conclusion that plaintiff had failed to prove "damage or the likelihood of damage." 631 F.2d at 189. On appeal, the Court of Appeals for the Second Circuit had to decide "[j]ust what that burden is and what evidence will satisfy it. . . ." Id. The court began by analyzing the historical background of the Lanham Act and Congress' intent to broaden the scope of liability that had previously existed for commercial torts. The court concluded that the language of the statute requires, both as a matter of standing, and as an element of the substantive offense, that a plaintiff seeking only injunctive relief establish something more than a "mere subjective belief that he is . . . likely to be damaged," but that the plaintiff "need not quantify the losses actually borne." Id. Rather, the court reasoned that the burden under S 43(a) actually lay "between those two extremes." Id. The court's analysis was based upon the language of the Lanham Act, which provides a cause of action for "any person who believes that he or she is or is likely to be damaged" by the forbidden act. 15 U.S.C. S 1125(a). The court held that,

> despite the use of the word `believes,' something more than a plaintiff 's mere subjective belief that he is injured or likely to be damaged is required before he will be entitled even to injunctive relief . . . . The statute demands only proof providing a reasonable basis for the belief that the plaintiff is likely to be damaged as a result of the false advertising.

Carter-Wallace, 631 F.2d at 189-90.

Thus, under Carter-Wallace, a plaintiff must prove that it has a reasonable basis for believing that it is likely to suffer

injury, and that a causal nexus between the injury and the

false name or advertisement. The court in Carter-Wallace concluded that the District Court had set the bar too high by requiring the plaintiff " `to prove the existence of some injury caused by' the defendant" as that demands"proof of actual loss and specific evidence of causation." The court reasoned that "[p]erhaps a competitor in an open market could meet this standard with proof short of quantified sales loss, but it is not required to do so." Id. at 190. The Court of Appeals concluded "[t]he correct standard is whether it is likely that Carter's advertising has caused or will cause a loss of [plaintiff's] sales, not whether [plaintiff] has come forward with specific evidence that [defendant's] ads actually resulted in some definite loss of sales." Id.

However, in Carter-Wallace, the plaintiff was contending that the defendant's representation that NAIR contained baby oil improperly suggested that NAIR was a Johnson & Johnson product. Johnson & Johnson also claimed that the defendant's claims that NAIR could moisturize and soften skin was false, and that those false claims were impacting on the sale of Baby Oil. However, since Baby Oil was not a hair removal product there was an issue as to whether the defendant's product adversely impacted the sale of plaintiff 's Baby Oil. Johnson & Johnson attempted to address that concern by introducing consumer testimony to establish that users of NAIR relied upon that product's purported skin moisturizing qualities in refraining from using Baby Oil. Thus, the contest there was between a hair removal product with baby oil as an additive that purported to moisturize skin, and the manufacturer of Baby Oil – which was clearly not a hair removal product. That is not analogous to our situation because the plaintiff and defendant here both manufacture purported breath freshening products.4

_____

4. Moreover, the procedural posture in Carter-Wallace is different from that in the present case. In Carter-Wallace, the District Court had not yet

considered whether defendant's advertising was false or misleading, as that was an issue to be resolved on remand. Instead, the District Court's dismissal was "granted on the ground that (Johnson) failed to carry its burden of proving damages or the likelihood of damage." Carter-Wallace, 631 F.2d at 188-89. By contrast, in the instant case the District Court had already found BreathAsure's advertising to be misleading.

11

Moreover, BreathAsure's advertisements implicitly aimed at Warner-Lambert's products. Although BreathAsure's ads never mentioned Warner-Lambert's products by name, they implicitly told consumers to stop "masking" bad breath with

plaintiff 's products and start "attacking it at its source" with defendant's products. See Castrol, 987 F.2d at 946 ("there need not be a direct comparison to a competitor for a statement to be actionable under the Lanham Act"). Accordingly, the District Court's conclusion that consumers were equally as likely to adopt a belt and suspenders approach and use BreathAsure's products to supplement Warner-Lambert's is misplaced and is not supported by the analysis in Carter-Wallace. There, the court was careful to note that, although "likelihood of injury and causation will not be presumed, but must be demonstrated," plaintiff can demonstrate it with "proof providing a reasonable basis for the belief that the plaintiff is likely to be damaged as a result of the false advertising." Carter-Wallace, 631 F.2d at 190. Thus, Carter-Wallace does not support the District Court's refusal to enjoin use of the product name.

Similarly, we do not think the District Court's analysis is supported by the decision in Ortho. There, the plaintiff manufactured two products designed to relieve the effects of sun-induced aging of human skin, and plaintiff sued to enjoin defendant from advertising that the defendant's products had an "anti-aging effect." Plaintiff 's products were prescription drugs, and defendant manufactured over-the-counter cosmetics. Following a bench trial, the District Court granted defendant's motion to dismiss based upon the court's conclusion that the plaintiff lacked standing under the Lanham Act. The court held that plaintiff had not established a protectable interest in the ingredients of those of its own products that were purportedly threatened by defendant's products. Thus, plaintiff had not established that defendant's advertising was likely to cause injury. See Ortho, 32 F.3d at 693. The Court of Appeals for the Second Circuit affirmed stating:

> We hold that since [plaintiff's] products are not obviously in competition with [defendant's] [plaintiff] was required to submit proof demonstrating that consumers view [defendant's] cosmetics as a

12

> comparable substitute for [plaintiff's] drugs. Because [plaintiff] failed to do so . . . we affirm the judgment of the District Court.

Id. at 692. It was in that context that the court explained that a plaintiff 's subjective belief of injury was not sufficient to confer standing under the statute. However, the court also explained that the plaintiff need not establish direct competition or lost sales. The court also stated:

> "[t]he likelihood of injury and causation will not be

presumed, but must be demonstrated in some manner." The type and quantity of proof required to show injury and causation has varied from one case to another depending on the particular circumstances. On the whole, we have tended to require a more substantial showing where the plaintiff's products are not obviously in competition with defendant's products, or the defendant's advertisements do not draw direct comparisons between the two.

Id. at 694 (internal citations omitted). Since defendant's over-the-counter cosmetics were not in direct competition with plaintiff 's prescription drugs, the court concluded that plaintiff 's subjective belief of injury was not sufficient for standing purposes because there was no evidence that consumers would view defendant's cosmetics as a substitute for plaintiff's prescription drugs. The court concluded, "[t]he missing link in [plaintiff's] proof is evidence that [defendant's] advertising will have the effect on consumers that [plaintiff] says it will -- in other words, that consumers will see [defendant's] cosmetics as substitutes for [plaintiff 's] drugs. In other cases, this link has been supplied by consumer surveys or consumer witnesses." Id. at 695. "Without such proof, it would be just as reasonable to believe that consumers who buy [defendant's] products will also buy [plaintiff's] drugs or, alternatively, that the type of consumer who buys [defendant's] over-the-counter cosmetics is not the type who would seek out a prescription drug." Id. at 697. The District Court here found this language in Ortho persuasive in concluding that Warner-Lambert had to come forward with similar evidence to establish that BreathAsure products

13

competed with its products and did not merely supplement them.

The District Court synthesized the holdings of Carter-Wallace and Ortho as follows:

How then in a nutshell do the rulings and principles of such cases as J&J and Ortho become translated into a standard or analysis to be applied to the case at bar? The Court determines that in this matter the plaintiff was required to show by at least some persuasive evidence that Breath Asure alone in the future, even with the residual impact of prior ads to some extent, will likely damage or injure the plaintiff in the breath freshener market. And as mentioned before, the plaintiff has not carried that burden.

A.22. However, as noted above, Ortho's discussion of

consumer surveys was in the context of an inquiry into whether plaintiff had standing to sue under S 43(a). The standing inquiry was necessary because defendant's products and the plaintiff 's products were not in obvious competition in the marketplace.

Moreover, Parkway Baking establishes the standard for the present appeal inasmuch as Warner-Lambert sought only an injunction. As noted above, Carter-Wallace is distinguishable from the instant litigation. However, the analysis there is consistent with Parkway Baking insofar as it applies to our inquiry. In Carter-Wallace the Court of Appeals stated: "the statute demands only proof providing a reasonable basis for the belief that the plaintiff is likely to be damaged as a result of the false advertising." Carter-Wallace, 631 F.2d at 190.

A showing of a reasonable belief of injury will usually be sufficient to establish a reasonable likelihood of injury under S 43(a). Clearly, if a plaintiff can not establish that its subjective belief of future injury from the challenged conduct is reasonable, plaintiff can hardly claim to have shown a reasonable likelihood of injury. There must be some basis for the subjective belief in order to establish the reasonableness of that belief, and that basis will usually

14

equate with a showing of reasonable likelihood of future harm under the statute.5

It is uncontested that BreathAsure's claim regarding the efficacy of its ingestible capsules is without any scientific foundation. The District Court correctly concluded that claim was a deceptive misrepresentation that "implies assurance where there is no basis for it." A.13. The permanent injunction that the District Court entered states in part that: "Defendant BreathAsure, Inc. is permanently enjoined from claiming, either directly or by implication, . . . with respect to BreathAsure or BreathAsure-D . . . that . . . it works. . . " (emphasis added). A.1. It did so because defendant's claims of breath assurance were literally false. Castrol, 987 F.2d at 944. ("If a defendant's claim is untrue, it must be deemed literally false"). The court also concluded that BreathAsure's breath freshener does compete with Warner-Lambert's breath fresheners "in general." That should have been sufficient to enjoin use of the misleading trade names under S 43(A), and the District Court should not have required Warner-Lambert to produce the kind of consumer surveys required in Carter-Wallace and Ortho. See Johnson & Johnson v. Rhone-Poulenc Rorer, 19 F.3d 125 (3d Cir. 1994). In Rhone-Poulenc we stated:

> If a plaintiff proves a challenged claim is literally false,
> a court may grant relief without considering whether
> the buying public was mislead . . . . If a plaintiff does
> not prove the claim is literally false, he must prove that
> it is deceptive or misleading, which depends on the
> message that is conveyed to consumers . . . . Public
> reaction is the measure of a commercial's impact . ..

_____

5. We need not now decide if a reasonable belief will always equate with a reasonable likelihood of injury as it is clear that, under the circumstances before us now, Warner-Lambert established the reasonableness of its belief of future injury if defendant continued to be able to represent, through the use of its name, that its products provided purchasers with some assurance of fresher breath. The circumstances that establish the reasonableness of that belief also establish the likelihood of future harm from the defendant continuing to use its name, thereby representing its products as effective breath fresheners in the "side by side marketing of BreathAsure and the plaintiff 's products. . . "

Dist. Ct. at A.26.

15

> the success of the claim usually turns on the
> persuasiveness of a consumer survey. The factfinder
> must determine whether the public was, in fact,
> misled.

19 F.3d at 129.

In Sandoz Pharmaceuticals v. Richardson-Vicks, Inc., 902 F.2d 222, 227 (3d Cir. 1990) we explained that a plaintiff under the Lanham Act need not establish that a competitor's claims are false or misleading when that is apparent from the advertising itself. Here, the District Court required Warner-Lambert to introduce the same kind of evidence that would have been required if BreathAsure's claims were not literally false. However, inasmuch as BreathAsure's claim that its capsules could assure fresh breath was literally false, Warner-Lambert did not have to introduce consumer testimony, marketing surveys or proof of lost profits to enjoin use of the BreathAsure trade name.

As noted above, the District Court found that BreathAsure and Warner-Lambert "are in competition in a general sense in the breath freshener market." A.25. However, the court then seemed to eviscerate thatfinding by also concluding that BreathAsure was a "niche product" that was as likely to be used to compliment or supplement Warner-Lambert's products as to replace them. However, we do not interpret the District Court's conclusion that

BreathAsure products are "niche products" as afinding that those products do not compete with other breath-freshening products.6 Rather, we conclude that the District Court correctly found that the parties' products do compete inasmuch as both are promoted as breath fresheners; the Warner-Lambert and BreathAsure products appear in close proximity to each other in stores; and BreathAsure's own advertisements implicitly promoted BreathAsure as a superior alternative to Warner-Lambert's products.

We also conclude that the District Court's finding that the BreathAsure product name is "deceptive and a misrepresentation of the products' qualities" was not clearly

_____

6. Indeed, the court here noted that plaintiff 's breath fresheners and defendant's are marketed "side by side." See A.26.

16

erroneous. The District Court recognized that the defendant's deceptive ads were likely to injure Warner-Lambert and properly enjoined defendant from continuing to claim that its products were effective. The District Court, as previously noted, enjoined the defendant from making those claims "either directly or by implication." However, the court then embroidered a loop hole into the fabric of the injunction by allowing the defendant to continue to refer to its products as "BreathAsure."

Inasmuch as the defendant's products compete with plaintiff 's products we can not reconcile the District Court's finding that the advertisements were likely to injure Warner-Lambert with that court's concomitant refusal to enjoin use of these deceptive trade names based upon a belief that Warner-Lambert had not shown a reasonable likelihood of injury from their continued use. Under Parkway Baking, there "seems to be no requirement that purchasers actually be deceived, but only that the false advertisements have a tendency to deceive." 255 F.2d at 649. That tendency is evident here. Indeed, it is surely not coincidence that defendant selected trade names suggesting that those who use the products have assurance of fresh breath.

Warner-Lambert demonstrated a reasonable likelihood of injury from the advertising that conveyed BreathAsure's message, and Warner-Lambert's belief that it would be harmed if the defendant continued to refer to its products as "BreathAsure" is just as reasonable. The name falsely tells the consumer that he or she has assurance of fresher breath when ingesting one of the defendant's capsules. That is not true. We therefore hold that the District Court

erred in concluding that the plaintiff failed to establish the likelihood of injury necessary to enjoin use of BreathAsure's trade names, and that the District Court abused its discretion in refusing to enjoin use of those names.

III.

Accordingly, we will reverse the order of the District Court insofar as it denies Warner-Lambert's request to enjoin defendant from using "BreathAsure" or

17

"BreathAsure-D" or any similarly misleading trade name, and remand for the District Court to enter order consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

18