**KENNEDY INDUSTRIES, INC.**

v.

**Brian APARO, et al.**

**No. Civ.A. 04–5967.**

United States District Court, E.D. Pennsylvania.

July 22, 2005.

Robert A. Klein, Berkowitz Klein LLP, Malvern, PA, for Plaintiff.

Gary M. Marek, Law Offices of Gary M. Marek, Mount Laurel, NJ, Kristie Hatcher–Bolin, Mark N. Miller, Gray Robinson, Lakeland, FL, Sara A. Begley, Wayne C. Stansfield, Reed Smith LLP, Philadelphia, PA, for Defendants.

Michael J. Hurvitz, Rawle & Henderson LLP, Philadelphia, PA, for Counter Claimants.

## MEMORANDUM

BARTLE, District Judge.

Plaintiff Kennedy Industries, Inc., a seller of hygienic products including a skin protection and a skin cream for wrestlers, sued the defendants Driving Force, Inc. ("Driving Force") and its president Brian Aparo, as well as several of Driving Force's distributors [1] for unfair competition, specifically, false advertising, under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[2] The plaintiff seeks both injunctive relief and damages.

At an early status conference, the parties agreed to forego a hearing on plaintiff's motion for preliminary injunction, to take expedited discovery, and then to proceed directly to a hearing on plaintiff's request for a permanent injunction. The trial on plaintiff's claim for damages would await another day. Following the hearing for a permanent injunction under the Lanham Act, the court now makes its findings of fact and conclusions of law.

## I.

Plaintiff for a number of years has sold an over-the-counter drug in the form of a spray or foam known as KS Skin Protection[3] to be used by school and college wrestlers before a match to protect their skin from chafing. It contains Dimethicone which the Food and Drug Administration ("FDA") has determined to be safe as a skin protectant. Due to reduced sales of KS Skin Protection since the introduction by defendants of their product, plaintiff now sells only KS Skin Creme for wrestlers.

In February, 2002 the defendant now known as Driving Force introduced its product variously known as 99 Athletic Instant Skin Sanitizer and 99 Antimicrobial Instant Skin Sanitizer and Protectant (collectively "99"). It is sold to wrestlers as a leave-on, no-rinse product for the entire body and directly competed with KS Skin Protection. Driving Force, which is located in New Hampshire, originally sold "99" directly to customers, but since 2004 it has done so exclusively through distributors in a number of states, including Pennsylvania.

The claims which Driving Force makes or has made about "99" are at the core of the present controversy. At various times since it has been on the market, Driving Force has asserted either on the label of the "99" bottle, on flyers sent to distributors, or in catalogs or other advertisements that "99":

a. outlasts perspiration;

b. kills 99.9% of harmful bacteria;

c. kills 99.9% of harmful bacteria on contact;

d. kills 99.99% of harmful bacteria;

e. kills 99.99% of harmful bacteria on contact;

f. kills ringworm;

g. kills athlete's foot;

h. kills impetigo;

i. kills jock itch;

j. kills plantar's warts;

---

1. Defendants Cliff Keen Athletic and James Keen stipulated prior to the injunction hearing to discontinue selling "99" products, discussed below, and never to sell those or similar products in the future. Accordingly, they are no longer subject to plaintiff's motion.

2. Plaintiff has also brought various related claims under state law.

3. KS Skin Protection was previously known as Kenshield Skin Protection.

k.   kills boils;

l.   kills MRSA;

m.  kills VRE;

n.   kills Strep;

o.   kills Staph;

p.   kills E–Coli;

q.   kills dozens of the most harmful bacteria and fungi;

r.   kills 99.9% of disease-causing germs, including VRE and MRSA;

s.   up to four hours of protection from all of the above listed microorganisms;

t.   provides hours of lasting protection from all of the above listed microorganisms;

u.   provides up to four hours of continuous protection from all of the above listed microorganisms;

v.   long-lasting, residual protection;

w.  more effective than alcohol-based products;

x.   is a protectant;

y.   is an instant skin sanitizer;

z.   exceeds the U.S. FDA protocols required for classification as a Health Care Personnel Hand Wash and as a First–Aid Antiseptic;

aa. meets and exceeds requirements for persistence of activity for athletic personnel and athletic trainers;

bb. rapidly sanitizes skin with a broad-spectrum kill that prevents the development of resistant germs;

cc. safe to use in any environment;

dd. maintains skin integrity and cleanse more effectively;

ee. makes skin clean and germ-free;

ff. is fully FDA compliant;

gg. has a two year shelf life;

hh. effective for up to two years;

ii.  is specifically designed and developed for the wrestling community;

jj.  is specifically formulated for wrestlers.

Pl.Ex. 24.

Driving Force has aggressively marketed many of these claimed attributes of "99" to the wrestling community. At one point in late 2003, Driving Force sent out 10,000 to 15,000 flyers as part of this marketing effort.

At the hearing before this court, the plaintiff presented experts, one a dermatologist and one an organic chemist with a Ph.D., who opined that all of the above claims are false and have no scientific or medical basis. We credit their testimony.

For example, Driving Force advertised that "99" kills 99.9% of harmful bacteria on contact. There are hundreds, if not thousands, of strains of bacteria. So far as the record before us reflects, only a few have been tested with any product containing .2% Benzethonium Chloride, the purported active ingredient in "99." Driving Force does not manufacture "99" and has never had it tested to determine its exact chemical composition. The other ingredients contained in "99" are not listed on the bottle and are not known by Driving Force. Thus, it is unknown how these other ingredients might affect the way "99" counters bacteria. In addition, most of the tests upon which Driving Force relies were done in vitro, that is, in the laboratory, and not in vivo, that is, on humans. No tests were done to determine how "99," or .2% Benzethonium Chloride for that matter, reacts to perspiration or to cotton or other clothing worn by wrestlers during their matches. In sum, no tests or studies were ever performed that demonstrate that "99" acts or reacts in the ways advertised when it is used for its intended purpose. None of the tests or studies on

which Driving Force relies supports any of its advertising claims.

It is also fanciful for Driving Force to declare in its advertisements that "99" kills ringworm, athlete's foot, impetigo, jock itch, plantar's warts, boils, MRSA, VRE, Strep, Staph, E–Coli, dozens of the most harmful bacteria and fungi, and 99.9% of disease-causing germs, including VRE and MRSA. Specifically, Driving Force had no basis for the following flyer sent to its distributors in 2003 in which it graphically contrasted plaintiff's product with "99." It stated, in relevant part:

KILL OR BE KILLED.

|  | 99 Antimicrobial Instant Skin Sanitizer | KENNEDY Skin Protectant |
| --- | --- | --- |
| Kills Ringworm | YES | NO |
| Kills Impetigo | YES | NO |
| Kills Staph | YES | NO |
| Kills Strep | YES | NO |
| Kills E–Coli | YES | NO |
| Kills 99.9% of harmful bacteria | YES | NO |
| Kills Athlete's Foot | YES | NO |
| Kills Planter's [sic] Warts | YES | NO |
| Hours of Kill Power | YES | NO |

As noted above, plaintiff's experts have testified credibly that there is no medical or scientific justification for such grandiose pronouncements about "99" and that they are all false. Again, Driving Force has not come forward with any tests, studies, or experts to support its assertions that "99" "kills" such conditions, some of which are of an extremely serious nature.

In addition to the credible evidence proffered by plaintiff, the federal regulations themselves clearly contradict several of defendant's claims about "99." For example, 21 C.F.R. § 347.10 lists FDA approved active ingredients for skin protectants. This list does not include Benzethonium Chloride, though it does include Dimethicone, the active ingredient in plaintiff's KS Skin Protection. Section 310.545 lists numerous active ingredients that have *not*

been established as safe and effective for various specified uses. 21 C.F.R. § 310.545. Benzethonium Chloride is listed in this section under "skin protectant drug products" and "topical antifungal drug products." 21 C.F.R. §§ 310.545(a)(18)(ii), 310.545(a)(22)(ii).

We focus on several additional examples of false advertising. Driving Force says that "99" is "fully FDA compliant." It conceded at the hearing before the court that this is not so and stated that, going forward, this claim would not be made. Driving Force has also told the consuming public that "99" is specifically designed and formulated for wrestlers. To the contrary, it was originally formulated for general use as a hand wash called Germinal. It is manufactured and sold by a husband and wife in Florida, and Driving Force has simply relabeled it as a product for wrestlers.

Without detailing here the evidence with respect to the remaining claims about "99" recited above, we reiterate that each one is literally false.

Driving Force, although not conceding any significant wrongdoing, has recognized reality and now says that it has eliminated or will eliminate many of the above claims from Driving Force's advertising menu. However, its 2004–05 catalog, now in circulation, includes Driving Force's representations that "99" "kills 99.9% of harmful bacteria, including MRSA, Staph, Strep, and E–Coli." The catalog asserts that "99" "was also successfully tested by Microbiotest to kill: ringworm, jock itch, athlete's foot." The bottle label for "99" continues to state that it "kills 99.9% of harmful bacteria," "four hours of lasting protection," and "outlasts perspiration." As of June 27, 2005, Driving Force still claimed on its website that "99" was "FDA

compliant." As we have already found, none of these claims is true.

Driving Force has not advised its distributors to remove from their advertising or websites any of the false claims it states it is no longer asserting. Rather, it merely sent them updated advertising materials which omit some but not all of the inaccurate statements. A number of distributors continue to promote "99" with the false claims which originated with Driving Force even though they are no longer included in its more recent ads. Nor has Driving Force recalled those bottles of "99" with unsubstantiated advertising labels that still remain on store shelves or in the inventory of its distributors. Thus, while Driving Force itself may not currently be making the full array of false claims cited above, those claims continue to permeate and pollute the stream of commerce to the detriment of plaintiff.

Plaintiff continued to manufacture its KS Skin Protection until July, 2004. At that time, with the drop in sales despite plaintiff's increase in its own advertising, it came to the conclusion that it could not fairly compete with "99" due to the false statements Driving Force had made and was making in its advertisements. We credit this testimony. If plaintiff were guaranteed a level mat, so to speak, plaintiff would resume its sales of KS Skin Protection to the wrestling community.

## II.

Section 43(a) of the Lanham Act provides in relevant part:

**(a) Civil action**

(1) Any person who, or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which—

.    .    .    .    .

**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damages by such act.
15 U.S.C. § 1125.

■ Our Court of Appeals outlined in *Warner–Lambert Co. v. BreathAsure, Inc.,* 204 F.3d 87, 91–92 (3d Cir.2000), the various elements that a plaintiff must prove in order to establish a claim under § 43(a)(1)(B) of the Lanham Act. These elements are:

1) that the defendant has made false or misleading statements as to his own product [or another's];

2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience;

3) that the deception is material in that it is likely to influence purchasing decisions;

4) that the advertised goods traveled in interstate commerce; and

5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Warner–Lambert Co.,* 204 F.3d at 91–92.

In *Novartis Consumer Health v. Johnson & Johnson–Merck Consumer Pharm. Co.,* 290 F.3d 578, 590 (3d Cir.2002), the Court of Appeals explained that "although the plaintiff normally has the burden to demonstrate that the defendant's advertising claim is false, a court may find that a completely unsubstantiated advertising claim by the defendant is *per se* false

without additional evidence from the plaintiff to that effect."

■ The plaintiff seeks a permanent injunction. To be entitled to such relief under the Lanham Act, the plaintiff must establish "a reasonable basis for the belief that [it] is likely to be damaged as a result of the false advertising." *Novartis,* 290 F.3d at 595. As our Court of Appeals in *Warner–Lambert* explained, *"in cases of injunction,* however, there seems to be no requirement that purchasers actually be deceived, but only that the false advertisements have a tendency to deceive." *Warner–Lambert Co.,* 204 F.3d at 92. Plaintiff must also show that it will suffer irreparable harm if the injunction is not granted, that the potential injury to plaintiff if the injunction is not issued is greater than the potential injury to defendant if the injunction is issued, and that the public interest favors the granting of an injunction. *Novartis,* 290 F.3d at 595–97.

■ We find and conclude that plaintiff has demonstrated a reasonable basis for the belief that it is likely to be damaged as a result of Driving Force's literally false advertising. Plaintiff has established that the "false advertisements have a tendency to deceive" the buying public and are likely to influence purchasing decisions. There is no doubt that at all times relevant "99" has traveled in interstate commerce and that there has been injury to plaintiff as a result of lost sales.

Plaintiff has demonstrated that it has suffered and continues to suffer irreparable harm as a result of the false advertising by Driving Force of "99" and that failure to enter an injunction will mean that the irreparable harm will continue. Plaintiff cannot fairly compete with Driving Force unless and until the latter's inequitable conduct ceases. We find that potential injury to plaintiff in not granting an injunction exceeds any potential harm

to the defendant by granting an injunction. Any injury which Driving Force suffers is self-inflicted. Finally, the public interest favors an injunction. There is a strong public interest in preventing false advertising of products in the marketplace.

Driving Force argues that plaintiff is no longer a competitor and that it therefore is not entitled to injunctive relief. We disagree. First, plaintiff's KS Skin Protection has competed with "99" in the recent past, and plaintiff intends to resume selling its product once the false advertising ceases and it can do so fairly. Second, plaintiff continues to make and sell the competing KS Skin Creme used by wrestlers.

■ Driving Force also contends that plaintiff is foreclosed from injunctive relief because of laches. We are not persuaded. Inexcusable delay in instituting suit and prejudice to the defendant are the two elements to be considered in determining whether laches bars an action in equity. *Univ. of Pitt. v. Champion Prods., Inc.,* 686 F.2d 1040, 1044 (3d Cir.1982). While there is no specific deadline for declaring an equitable claim to be out of time, we must first look to the analogous statute of limitations for guidance. If this statutory period has expired, there is a presumption of inexcusable delay and prejudice. *See Santana Prods. v. Bobrick Washroom Equip.,* 401 F.3d 123, 138 (3d Cir.2005). Since the Lanham Act does not have a limitations period, we look here to Pennsylvania law as long as it is not inconsistent with federal law or policy. *Id.* at 135. Our Court of Appeals held in *Santana Products* that the six-year catch-all statute of limitations in the Pennsylvania Unfair Trade Practice and Consumer Protection Law is the most fitting one to consider for any laches analysis in a Lanham Act case such as this. *Id.*; 73 P.S. § 201–1 *et seq.*

Plaintiff first became aware of "99" in early 2002. This action was filed on December 22, 2004. During this period, John Kennedy, president of plaintiff, took various steps to learn more about "99" and engaged a consultant to contact the FDA about it before instituting suit. He did not sit on his hands. Commendably, he wanted to satisfy himself that the advertising of Driving Force was false before bringing a lawsuit. Plaintiff has timely filed suit within six years.

"99" is clearly not the elixir that Driving Force has made it out to be. Plaintiff has established that Driving Force and its distributors have violated the Lanham Act and that it is entitled to equitable relief. It has taken down and pinned its opponent based on the strength of the facts and the supporting law. Accordingly, we will grant plaintiff's motion for permanent injunction.

### PERMANENT INJUNCTION

AND NOW, this 22nd day of July, 2005, based on the findings of fact and conclusions of law set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) defendants Driving Force, Inc., its president Brian Aparo, Imbody, Inc., Purely Solutions, LLC, Southern Tier Athletics, Worldwide Sport Supply, Wrestling One, Wrestling Central, Ken Chertow's Wear and Gear, National Outfitters, Athletic Dealer's of America, Schuylklill Valley Sports, Sports Inc., Brian Burychka, NHSCA Outfitters, Bethlehem Sporting Goods, and Sunflower Wrestling, their officers, agents, servants, employees, attorneys and all those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are PERMANENTLY ENJOINED from advertising, labeling, or selling 99 Athletic Skin Sanitizer and 99 Antimicrobial Instant Skin Sanitizer and Protectant ("99") with any of the following claims:

a. outlasts perspiration;

b. kills 99.9% of harmful bacteria;

c. kills 99.9% of harmful bacteria on contact;

d. kills 99.99% of harmful bacteria;

e. kills 99.99% of harmful bacteria on contact;

f. kills ringworm;

g. kills athlete's foot;

h. kills impetigo;

i. kills jock itch;

j. kills plantar's warts;

k. kills boils;

l. kills MRSA;

m. kills VRE;

n. kills Strep;

o. kills Staph;

p. kills E–Coli;

q. kills dozens of the most harmful bacteria and fungi;

r. kills 99.9% of disease-causing germs, including VRE and MRSA;

s. up to four hours of protection from all of the above listed microorganisms;

t. provides hours of lasting protection from all of the above listed microorganisms;

u. provides up to four hours of continuous protection from all of the above listed microorganisms;

v. long-lasting, residual protection;

w. more effective than alcohol-based products;

x. is a protectant;

y. is an instant skin sanitizer;

z. exceeds the U.S. FDA protocols required for classification as a Health Care Personnel Hand Wash and as a First–Aid Antiseptic;

aa. meets and exceeds requirements for persistence of activity for athletic personnel and athletic trainers;

bb. rapidly sanitizes skin with a broad-spectrum kill that prevents the development of resistant germs;

cc. safe to use in any environment;

dd. maintains skin integrity and cleanse more effectively;

ee. makes skin clean and germ-free;

ff. is fully FDA compliant;

gg. has a two year shelf life;

hh. effective for up to two years;

ii. is specifically designed and developed for the wrestling community;

jj. is specifically formulated for wrestlers.

(2) any defendant may apply to the court to dissolve this injunction as to any of the above advertising claims if it can establish in the future that it has a valid in vivo test or study of "99," under conditions involving its intended use, that support any of said claims;

(3) defendants Driving Force, Inc., its president Brian Aparo, Imbody, Inc., Purely Solutions, LLC, Southern Tier Athletics, Worldwide Sport Supply, Wrestling One, Wrestling Central, Ken Chertow's Wear and Gear, National Outfitters, Athletic Dealer's of America, Schuylkill Valley Sports, Sports Inc., Brian Burychka, NHSCA Outfitters, Bethlehem Sporting Goods, and Sunflower Wrestling, their officers, agents, servants, employees, attorneys and all those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are PERMANENTLY ENJOINED from making any medical or scientific claim about "99" that is not supported by a valid in vivo test or study of "99" under conditions involving its intended use;

(4) Driving Force, Inc. shall transmit to all its distributors and sales agents who are not defendants a copy of this injunction (together with the accompanying Memorandum) with instructions not to advertise or sell "99" with any claims or labels enjoined in this Order and to remove any advertising, including website advertising, which is enjoined herein; and

(5) defendant Driving Force, Inc. shall forthwith recall at its own expense from its distributors who are not defendants all existing "99" bottles in their possession which contain labels with any enjoined claims.