

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-6-2009

# Burke v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4911

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Burke v. Comm Social Security" (2009). *2009 Decisions.* Paper 1770.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1770

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-4911

———

KAREN BURKE,
                    Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 04-cv-03031)
District Judge: Hon. Mary L. Cooper

———

Submitted Under Third Circuit LAR 34.1(a)
March 5, 2009

Before: SLOVITER, HARDIMAN, Circuit Judges, and
POLLAK[*], District Judge

Filed: March 6, 2009

———

OPINION

_____

[*] Hon. Louis H. Pollak, Senior Judge, United States District
Court for the Eastern District of Pennsylvania, sitting by
designation.

SLOVITER, Circuit Judge.

Appellant Karen Burke appeals the order of the United States District Court for the District of New Jersey, affirming the Commissioner's denial of her claim for Disability Insurance Benefits ("DIB").

**I.**

Burke, a high school graduate, who was approximately 50 years old when she applied for DIB, claimed that she was disabled due to physical and mental impairments. Her most recent work was as a receptionist, secretary, and customer service representative for Fleet Mortgage until approximately 1997, when she lost her job due to the relocation of her employer.

Burke applied for DIB in 2002. She claimed pain in her back and legs, inability to stand or sit for long periods of time, cramping of her thumb, depression, headaches, asthma, diabetes, heartburn, carpal tunnel syndrome, nerve damage in both arms, and high blood pressure. She is 5 feet tall and weighs approximately 250 pounds.

Her claim was denied administratively and thereafter by an administrative law judge ("ALJ") after a hearing. The Appeals Council denied Burke's request for review and the District Court affirmed the Commissioner's denial of benefits. Burke appeals.

**II.**

At the ALJ hearing, the following reports were offered into evidence. Burke's treating physician, Dr. Antonio Tsompanidis, submitted records showing that he had

2

treated her for hypertension, arm and back pain, and depression. He also submitted a Physical Residual Functional Capacity Assessment ("RFCA") after the hearing, concluding that Burke had the ability to occasionally lift and/or carry ten pounds, frequently lift and/or carry less than ten pounds, stand and/or walk less than two hours and sit for less than six hours in an eight-hour workday, and had limited ability to push and pull with her lower extremities. Dr. Tsompanidis also found that Burke's asthma caused her environmental limitations.

Dr. Floyd Krengel, D.O., examined Burke at the request of her attorneys and reported that she was unable to squat, "ambulate[d] with [a limping] and waddling gait," and had limited rotation of her hands and wrists. A.R. at 242. He diagnosed her with a number of disorders related to her lumbar spine and arms. He opined that Burke "satisfies the criteria for disability evaluation under Social Security on an orthopedic basis." A.R. at 243.

Dr. Philip Ilaria, who examined Burke because of her complaints of headaches, recommended that she undergo a cerebral angiography which showed no evidence of aneurysm and was otherwise normal except for minor atherosclerotic disease. Dr. Heyeun Kahng, a consulting physician, examined Burke and found that she walked unassisted at a "slow stride but normal heel to toe gait pattern" and could squat to eighty percent of normal. A.R. at 207. He diagnosed her with probable carpal tunnel syndrome, "probable degenerative disc disease of the lumbosacral spine," and moderate obesity.

3

A.R. at 207. Another consultant, psychologist Joyce Schreiber, Ed.D., examined Burke and concluded that she was of average intelligence and concentration, but her memory was mildly impaired "secondary to some emotionality." A.R. at 220. She found: "[Burke's] difficulty would be appropriately dealing with stress and some possible physical limitation secondary to her medical complications." A.R. at 221. Dr. Schreiber's main diagnosis was "[m]ajor depressive disorder, moderate without psychotic features." A.R. at 221.[1]

The ALJ heard testimony from Rocco J. Meola, a vocational expert, the only witness other than Burke who testified orally at the hearing. The ALJ asked him if a hypothetical person could perform the receptionist job that Burke described if she could:

> lift and carry objects weighing up to 20 pounds[;] [f]requently lift and carry objects weighing up to 10 pounds[;] [s]it, stand, and walk up to six hours in an eight hour day[; and] [p]ush and pull arm and leg controls not involving complex tasks or high stress situations or extensive fine manipulation . . . [i]n an environment free of excessive . . . pulmonary irritants.

A.R. at 292. Meola concluded that she could perform the job as Burke described it, but not as it is generally performed in the national economy. When the ALJ's hypothetical was altered such that the person could lift only ten pounds, sit up to six hours and walk up to two hours, Meola's conclusion was the same.

---

[1] A Mental RFCA completed by a non-examining state agency doctor at about the same time found no mental limitations, apart from a moderately limited capacity for "sustained concentration and persistence." A.R. at 224.

In her claim, Burke stated that she did most household chores, grocery shopped (with some assistance) and cooked meals for her family, managed the finances, and drove short distances. At the hearing, Burke testified that she could neither stand nor sit for long periods of time and that she used a cane to walk for long periods, but only left the house about once a week. She listed her social activities as watching television and visiting her grandchildren. Burke was able to attend to her personal hygiene but had difficulty combing her hair. She stated that her blood pressure had been under control through medication for at least two months, but depression "ha[d] taken over [her] life" and that she had thoughts of suicide. A.R. at 271. She took medication for depression prescribed by her primary care physician, but had not sought "treatment from a mental health professional." A.R. at 271. Burke conceded that her prior work basically consisted of sitting and only required light lifting – if any at all.

Following the hearing, the ALJ proceeded through the required five-step sequential analysis, see 20 C.F.R. § 404.1520, and found that (1) Burke had not engaged in "substantial gainful activity" since April 1, 2000; (2) Burke had severe impairments, including degenerative disc disease, hypertension, obesity, carpal tunnel syndrome, depression, and asthma; (3) those "impairments [did] not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4;" (4) Burke's "allegations regarding her limitations [were] not totally credible;" (5) Burke "retained the residual . . . capacity for light work not involving complex tasks, high-stress situations, or

5

extensive fine manipulation; in an environment free of excessive pulmonary irritants;" (6)

Burke's impairments "[did] not prevent [her] from performing her past relevant work as a

receptionist;" and, therefore, (7) Burke "was not under a 'disability' as defined in the

Social Security Act." A.R. at 21.

### III.

We review the Commissioner's factual findings to determine if they were based on

substantial evidence. 42 U.S.C. § 405(g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir.

2000).[2] Applying that standard, we conclude that substantial evidence supports the ALJ's

determination at step four that Burke could perform light work. In determining Burke's

residual functional capacity, the ALJ evaluated Burke's testimony, as well as medical

records from treating, examining, and consulting physicians. The ALJ discussed the

conflicting medical reports and explained that he "accord[ed] . . . no significant weight"

to "Dr. Krengel's assessment of disability and Dr. Tsompanidis' residual function

capacity assessment [because they] are unsupported by their objective findings [on] the

record as a whole." A.R. at 18.

For example, the ALJ noted that Dr. Tsompanidis did not "provide any objective

medical evidence in support of these extensive limitations," and was inconsistent with the

other medical evidence of record and with his own progress notes. A.R. at 17. A treating

_____

[2] The District Court had jurisdiction under 42 U.S.C. §
405(g). We have jurisdiction under 28 U.S.C. § 1291.

physician's opinion may be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). As this was not the case here, the ALJ did not err in according Dr. Tsompanidis' opinion "no significant weight." A.R. at 18.

Burke argues that, at step three, the ALJ did not properly consider whether her impairments met or equaled a listed impairment. Burke's argument is without merit. The ALJ evaluated the medical evidence and considered five disability listings related to Burke's impairments and gave reasons why her impairments failed to meet or equal each one. For example, with regard to Burke's spinal problems, the ALJ explained: "[C]laimant's impairment does not meet the criteria of Listing 1.04, Disorders of the Spine, as she does not have a herniated disc or the necessary evidence of nerve root compression." A.R. at 15. We reject Burke's argument.

Burke contends that the ALJ erred in failing to credit her subjective symptoms in evaluating her residual functional capacity. The ALJ evaluated Burke's testimony and made an express finding that her statements were "not entirely credible" because the "objective medical evidence fails to support [her] extensive subjective complaints." A.R. at 19-20. The ALJ also found that Burke's own testimony regarding her daily activities – "including cooking dinner nightly, . . . doing laundry, supermarket shopping, and driving" – undermined her claims. A.R. at 20. The ALJ noted that Burke's use of a cane had not

been prescribed by a doctor and that she had never sought "treatment from a mental health professional," despite claiming severe depression.  A.R. at 20.

Having reviewed the evidence of record, we conclude that the ALJ's determination was based on substantial evidence.

**IV.**

For the above-stated reasons, we will affirm the judgment of the District Court.