

Opinions of the United
States Court of Appeals
for the Third Circuit

2008 Decisions

3-11-2008

# Morrison v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4282

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Morrison v. Comm Social Security" (2008). *2008 Decisions.* Paper 1463.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1463

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4282
_____

STACEY MORRISON,
on behalf of Denzel Morrison,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 05-cv–3426)
District Judge:  Honorable Dennis M. Cavanaugh

_____

Submitted Under Third Circuit LAR 34.1(a)
on January 31, 2008

Before:  RENDELL and CHAGARES, Circuit Judges,
and POLLAK,* District Judge.

(Filed: March 11, 2008)

_____

* Honorable Louis H. Pollak, Senior Judge of the United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

_____

OPINION OF THE COURT

_____

RENDELL, Circuit Judge.

Stacey Morrison, on behalf of her now-seventeen-year-old son, Denzel, appeals the United States District Court for the District of New Jersey's affirmance of the Commissioner of Social Security's denial of Denzel's application for child Supplemental Security Income ("SSI") benefits.

Denzel suffers from bronchial asthma; multiple exostoses on different parts of his skeleton, including his legs, head, and ribs; and reactive depression/dysthymic disorder. Exostoses are benign bony growths that can cause varying degrees of pain and discomfort, can reappear if removed through surgery, and can grow to the size of a baseball. Denzel walks with a limp, apparently due to surgery that he had in 1996 to excise exostoses. Reactive depression/dysthymic disorder is marked by depressed mood, blunted affect, periods of restlessness, a soft-spoken nature, and anger episodes.

Denzel's application for benefits, filed in early 2003, was denied initially and upon reconsideration by the local Social Security Administration office. After Ms. Morrison subsequently requested a hearing, the Administrative Law Judge ("ALJ") found that Denzel was not disabled for SSI purposes and thus was not entitled to benefits. Ms. Morrison appealed to the Appeals Council, which rejected her request to review the ALJ's decision. She then appealed to the District Court, which, as noted above, affirmed

2

the denial of benefits. For the reasons discussed below, we will in turn affirm the judgment of the District Court.

The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) and we now have jurisdiction pursuant to 28 U.S.C. § 1291. In situations like this, in which the Appeals Council has denied the appellant's request to review the ALJ's denial of benefits, we review the decision of the ALJ. *Matthews v. Apfel*, 239 F.3d 589, 582 (3d Cir. 2001). In doing so, we apply the same standard as the District Court: we review all legal issues de novo and all factual findings for substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jones*, 364 F.3d at 503. In order to allow us to conduct our review, the ALJ must give a reasoned explanation for his decision, including how he factored in evidence that arguably pointed to the opposite conclusion. *Burnett v. Comm'r*, 220 F.3d 112, 119-20 (3d Cir. 2000); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In *Jones*, we made clear that the purpose of this requirement is "to ensure sufficient development of the record and explanation of findings to permit meaningful review." 364 F.3d at 505. The ALJ does not need "to use particular language or adhere to a particular format in conducting his analysis." *Id.*

A child under eighteen is only eligible for SSI benefits if (1) he is not doing substantial gainful activity; (2) he has a medically determinable impairment or

combination of impairments that is severe; and (3) the impairment or combination of impairments meets, medically equals, or functionally equals the severity of one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R § 416.924. An impairment or combination of impairments functionally equals a listed impairment if it causes a "marked" limitation in two of six areas of functioning or an "extreme" limitation in one of those six areas.[1] *Id.* § 416.926a(a). The six areas are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *Id.* § 416.926a(b)(1).

The ALJ found that Denzel was not engaged in substantial gainful activity and that his three impairments were all severe. However, the ALJ also found that none of the impairments — whether on their own or in combination with one another — met, medically equaled, or functionally equaled a listed impairment.

Of Denzel's three impairments, there are only listings for asthma. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 3.03, 103.03. The ALJ found that Denzel's condition did not meet these listings, as there was no evidence of pulmonary-function testing, emergency room visits, inpatient hospitalization, intravenous antibiotics, prolonged inhalation

---

[1] A "marked" limitation "interferes *seriously* with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i) (emphasis added). An "extreme" limitation "interferes *very seriously* with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i) (emphasis added).

4

therapy, or chronic wheezing.  *See id.*

Since there is no listing for exostoses, the ALJ analyzed whether Denzel's condition was medically equivalent to what he thought were the most analogous listed impairments — "major dysfunction of a joint," "fracture of the femur, tibia, pelvis, or one or more of the tarsal bones," and "fracture of an upper extremity."  20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.02, 1.06, 1.07, 101.02, 101.06, 101.07.  The ALJ concluded that Denzel's condition was not medically equivalent to any of these because, *inter alia*, he did not have the "inability to ambulate effectively," which is a basic requirement for all listed musculoskeletal impairments.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.00(B)(2), 101.00(B)(2).  As the regulations explain, the "inability to ambulate effectively" comprises "an extreme limitation of the ability to walk" and is generally defined as "having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the function of both upper extremities."  *Id.*  The ALJ acknowledged that Denzel "experienced periods of difficulty walking of varying lengths, did receive home tutoring for a couple of months in 2003 as a result, has been provided with handicapped bus transportation for school, has been given a key to operate the elevator at school, and has received a special accommodation at school for fire drill evacuations."  (App. 25.)  However, the ALJ found that these factors were outweighed by the fact that Denzel walked home from school (even though he had the option to take the handicapped bus) and generally participated in

5

gym, including playing basketball, volleyball, and baseball.

The ALJ also compared Denzel's condition to the listings for mood and affective disorders, which he thought were the most analogous to reactive depression/dysthymic disorder. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 102.04. The ALJ provided an extensive explanation for why Denzel's condition was not medically equivalent to either listing, including a criterion-by-criterion analysis of why Denzel does not have a major depressive syndrome and why his depression does not limit his mental functioning to the degree required by § 12.04 and § 102.04. Among other things, the ALJ found it significant that Denzel enjoyed playing games, was interested in his school work and generally received good grades, had a few friends, was on student council, cared for his grooming and hygiene the same as other children his age, was generally cooperative during his periodic psychotherapy sessions, was able to self-cope, and had no difficulty concentrating, no fatigue, and no suicidal thoughts. Moreover, in March 2003, Denzel's teacher could not identify any limitation in the areas of interacting and relating with others or caring for oneself.

Finally, the ALJ determined that Denzel's impairments were not functionally equivalent to any listed impairment. Specifically, he found that Denzel's impairments caused no limitation in the domains of acquiring and using information, attending and completing tasks, and caring for oneself, and caused less-than-marked limitations in the domains of interacting and relating with others, moving about and manipulating objects,

6

and health and physical well-being.  Once again, the ALJ provided a significant explanation for his conclusion, some of which referred back to his analysis of why Denzel's condition did not meet or medically equal any listed impairment.

Throughout, the ALJ gave substantial weight to the opinions of the doctors from the state's Disability Determination Service ("DDS"), who thought that Denzel's exostoses and asthma did not meet, medically equal, or functionally equal a listed impairment.  *See* 20 C.F.R. § 416.927(f).[2]

Ms. Morrison makes a number of arguments on appeal.  First, she contends that, in conducting his medical equivalence analysis, the ALJ compared Denzel's exostoses to the wrong condition.  She maintains that the most similar listing was for "deficit of musculoskeletal function due to deformity or musculoskeletal disease," entailing "walking [that] is markedly reduced in speed or distance despite orthotic or prosthetic devices," and that Denzel's condition is medically equivalent to it.  However, this is *former* listing 101.03, which was eliminated when the listings were amended in 2001.  *See* Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed Reg. 58,010, 58,021 (2001).  As discussed above, "inability to ambulate effectively" is now required for any musculoskeletal impairment.  Given the fact that Denzel generally participated in gym and walked home from school, a reasonable

---

[2] The DDS doctors did not have before them documentation about Denzel's depression.

mind could conclude that, despite his condition, Denzel did not meet this requirement. Therefore, substantial evidence supports the ALJ's conclusion that Denzel was not unable to ambulate effectively.

Ms. Morrison also argues that the ALJ failed to consider Denzel's three impairments in combination with one another and that we should therefore remand with instructions for him to do so. The ALJ, however, explicitly indicated a number of times that he was considering the impairments in combination. (App. 25, 27, 28.) We see no reason not to believe him.

Finally, Ms. Morrison contends that the ALJ's functional equivalence analysis was conclusory and maintains that Denzel's condition is in fact functionally equivalent to the listings. Specifically, she asserts that Denzel suffers from marked limitations in four domains: relating with others, moving about and manipulating objects, caring for one's self, and health and well-being.

We conclude that the ALJ's explanation of why Denzel had either no limitation or a less-than-marked limitation in each of these four domains was sufficient "to permit meaningful review," *see Jones*, 364 F.3d at 505, and, moreover, that his ultimate findings are supported by substantial evidence. Regarding the domain of interacting and relating with others, the ALJ referred back to his thorough analysis of why Denzel's condition was not medically equivalent to the listings for mood and affective disorders. Regarding the domain of moving about and manipulating objects, the ALJ referred back to his more-

8

than-sufficient analyses of why Denzel's condition did not meet the listings for asthma and was not medically equivalent to analogous listings for musculoskeletal impairments. Regarding the domain of caring for oneself, the ALJ referred back again to his in-depth comparison of Denzel's condition to the listings for mood and affective disorders. Lastly, the domain of health and physical well-being contemplates "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [the child's] functioning" that were not considered under the domain of moving about and manipulating objects. 20 C.F.R. § 416.926a(*l*). Here, the ALJ referred once more to his prior discussion of why Denzel's condition neither met the listings for asthma nor medically equaled the listings for musculoskeletal impairments and, again, gave substantial weight to the DDS doctors' opinions. In explaining his conclusion, the ALJ acknowledged that pain caused by Denzel's exostoses sometimes wakes him up at night and has caused him to be absent from school for significant periods of time; however, the ALJ also highlighted the fact that special accommodations, including home-tutoring, have been provided to allow Denzel to continue to attend school and that the treatment he has received since February 2003 — a combination of physical therapy, rest, alcohol rubs, and occasional non-narcotic prescription medication — provide him with some relief from his pain.

For the reasons discussed above, we will AFFIRM the District Court's judgment affirming the Commissioner's denial of benefits.

9