

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-5-2009

# Brenda Dismuke v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1342

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Brenda Dismuke v. Comm Social Security" (2009). *2009 Decisions.* Paper 1919.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1919

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-1342
_____

BRENDA J. DISMUKE,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

_____

On Appeal From the United States District Court
for the District of New Jersey
(Civil No. 05-cv-05613)
District Judge: Honorable Freda Wolfson

Submitted Under Third Circuit LAR 34.1(a)
November 19, 2008

Before: BARRY, CHAGARES, <u>Circuit</u> Judges, and COHILL,[*] <u>District Judge</u>.

(Filed: February 5, 2009)

_____

OPINION OF THE COURT
_____

---

[*] The Honorable Maurice B. Cohill, Jr., Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

CHAGARES, Circuit Judge.

Brenda Dismuke appeals from a District Court order affirming the Commissioner of Social Security's denial of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("SSA"), for the period beginning on December 5, 1995 and continuing through August 13, 2001. Dismuke argues that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence. We disagree and will affirm the District Court's judgment.

I.

Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts.

Dismuke filed for social security benefits due to combined impairment of her heart, back, knee, and wrist, and for being on multiple medications. At the supplemental hearing on December 18, 2002, Dismuke testified that during the period of time in question, she was living by herself and that she drove, but not often. Appendix 1 of 2 ("App.") 692, 703. She did simple chores like dusting and hand-washing dishes, but could not perform onerous tasks. App. 702. Dismuke stated that she stopped working after being injured in an accident on December 4, 1995. App. 692-93. She attempted to go back to work several times, but testified that she could not hold a job because of pain. App. 696-98. At the hearing, Dismuke reported neck, back, right knee and right wrist pain, and noted that the side effects of her medication resulted in headaches and nausea.

2

App. 695, 698-99, 705-07.  Dismuke also indicated that she had diabetes and, due to her heart problems, suffered from shortness of breath, sleep difficulties, and constant tiredness.  App. 707-10.  The ALJ determined that Dismuke had the following severe impairments: coronary artery disease, atypical chest pain, obesity, and back and knee pain.  App. 237.  However, the ALJ concluded that Dismuke "did not [have] an impairment or combination of impairments which was severe enough to meet or medically equal one of the impairments listed in" the Impairments List.  Id.  The ALJ next determined that, based on the vocational expert's testimony, Dismuke's own testimony, and the Medical-Vocational Guidelines ("MVG"), Dismuke could have performed other work in the national economy.  App. 247-49.  Therefore, the ALJ concluded that Dismuke was not under a "disability" as defined in the SSA during the closed period beginning on December 5, 1995 through August 13, 2001.  App. 250.

## II.

The District Court had subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c).  We have jurisdiction to review the District Court's decision under 28 U.S.C. § 1291.  Our review is limited to determining whether substantial evidence supports the ALJ's finding that Dismuke was not disabled.  42 U.S.C. §§ 405(g), 1383(c); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).  "'Substantial evidence' has been defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Smith v. Califano,

3

637 F.2d 968, 970 (3d Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

## III.

The SSA gives the Commissioner authority to pay social security benefits to disabled persons. 42 U.S.C. §§ 423(d), 1382. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner applies a five-step test to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first two steps require the claimant to demonstrate that she is not currently engaging in substantial gainful activity, and that she is suffering from a severe impairment. Id. A failure of proof at step one or step two renders the claimant ineligible for DIB and SSI. See Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).

If, however, the claimant progresses to step three, then the question becomes

4

"'whether the impairment is equivalent to one of a number of Listed Impairments [articulated in 20 C.F.R. Pt. 404, Subpt. P, App. 1] that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.'" Knepp v. Apfel, 204 F.3d 78, 84 (3d Cir. 2000) (quoting Bowen v. Yuckert, 482 U.S. 137, 141 (1987)); see also 20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant's specific impairment is not a Listed Impairment, the ALJ must consider whether the claimant's impairment or combination of impairments is "medically equivalent" to a Listed Impairment.  See 20 C.F.R. § 404.1526(a).

An impairment or combination of impairments is "medically equivalent" to a Listed Impairment if it is "at least equal in severity and duration to the criteria of any [L]isted [I]mpairment."  Id.  In other words, the claimant's impairment "'must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'"  Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)).  A claimant who satisfies step three "is conclusively presumed to be disabled."  Knepp, 204 F.3d at 84 (citation and quotation marks omitted).  A claimant who fails at step three must continue to steps four and five.

At step four, the question is "whether the claimant retains the residual functional capacity to perform her past relevant work."  Plummer, 186 F.3d at 428.  It is the claimant's burden to establish an inability to return to her past relevant work.  See id.  A

5

failure of proof at step four dooms the claimant's case. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If, however, the claimant satisfies this burden, then the burden of production shifts to the Commissioner to show, at step five, that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." Plummer, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the cumulative effect of all of the claimant's impairments renders her capable of working. See 20 C.F.R. § 404.1520(g).

IV.

On appeal, Dismuke argues that the ALJ's decision is not supported by substantial evidence. She specifically challenges the ALJ's determinations at steps three and five. At step three, the ALJ concluded that Dismuke's medically determinable impairments did not meet or medically equal one of the Listed Impairments. At step five, the ALJ found that Dismuke had the residual functional capacity to perform a wide or significant number of sedentary jobs in the national economy. Dismuke raises several arguments to challenge these conclusions which, for the following reasons, we find unpersuasive.

A.

Dismuke first contends that while her multiple severe impairments "separately might not meet or equal a specific Listing," (Br. 22), the ALJ erred by failing to consider

6

properly, compare and discuss multiple impairments and whether they, *in the aggregate*, meet the requirements of the Impairment List, or in combination are equivalent to a Listed Impairment. We disagree. Although in evaluating Dismuke's impairments the ALJ grouped them into three separate categories based upon specific listings in the Impairment List (cardiovascular, musculoskeletal and spinal), the decision indicates that the ALJ considered all the impairments individually and in combination. Moreover, in concluding that Dismuke "did not [have] an impairment or combination of impairments which was severe enough to meet or medically equal one of the" Listed Impairments, App. 237, the ALJ engaged in a very thorough analysis of the medical evidence. We therefore conclude that substantial evidence supports the ALJ's conclusion at step three.

B.

Next, Dismuke asserts that the ALJ erred in calculating her residual functional capacity because the ALJ (1) failed to consider Dismuke's symptoms and non-exertional limitations, and did not adequately explain how Dismuke could do any work on a sustained basis; and (2) relied on the MVG rather than the testimony of the vocational expert to determine whether there were other jobs in the national economy that Dismuke could perform. Again, we disagree.

In calculating Dismuke's residual functional capacity, the ALJ considered all of Dismuke's "symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other

7

evidence based on the requirements" of the SSA. App. 240. The ALJ specifically identified Dismuke's complaints of high blood pressure, shortness of breath, chest pains, fatigue, right knee injury, back and ankle pain. App. 241. The ALJ also did not ignore Dismuke's non-exertional limitations; as the District Court correctly noted, Dismuke never explicitly identified such limitations and never pointed to any credible medical evidence to substantiate her claims. The ALJ therefore did not err in concluding that, in light of the objective medical evidence, Dismuke's ability to perform work activities was not significantly limited by her physical impairments and that she retained the functional capacity to perform a significant range of sedentary work.

We also disagree with Dismuke's assertion that the ALJ relied exclusively on the MVG and ignored vocational expert testimony in determining whether there were jobs in the national economy that Dismuke could perform. The Commissioner's burden at step five is generally satisfied by referring to the MVG. 20 C.F.R. §§ 404.1569, 416.969; Heckler v. Campbell, 461 U.S. 458, 467 (1983). When a claimant asserts both exertional and non-exertional impairments, however, the ALJ cannot rely on the MVG exclusively, but must consider other vocational evidence. Poulos v. Commissioner of Soc. Sec., 474 F.3d 88, 94 (3d Cir. 2007); Sykes v. Apfel, 228 F.3d 259, 261 (3d Cir. 2000). Specifically, the ALJ must consider "all of the relevant facts in the case," Burnam v. Schweiker, 682 F.2d 456, 458 (3d Cir. 1982) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2)), and vocational expert testimony, Jesurum v. Secretary, 48 F.3d 114,

8

121 (3d Cir. 1995).

Here, Dismuke's argument fails because the ALJ only used the MVG as a framework from which he began his analysis. In concluding that there are significant jobs in the national economy that Dismuke could perform, the ALJ relied on vocational expert testimony and the relevant facts of the case. See App. 249 ("Based on the testimony of the Vocational Expert, the undersigned concludes that considering the claimant's age, educational background, work experience, and residual functional capacity, she was capable of making a successful adjustment to work that exists in significant numbers in the national economy.").

In relevant part, the ALJ asked the vocational expert a hypothetical question to determine whether jobs exist in the national economy for an individual matching Dismuke's vocational background and functional limitations. Id. The vocational expert testified that, considering all the relevant factors, such a hypothetical individual would be able to work as a surveillance systems monitor and as an information clerk. Id. Because these types of jobs represent a significant number of jobs in the national economy, the ALJ concluded that Dismuke was not disabled. Id.

Dismuke emphasizes that in response to a hypothetical question that her own counsel posed to the vocational expert, the expert testified that such a person would not be able to work in the national economy. Dismuke's hypothetical, however, included additional limitations that were not supported by the objective medical record and

9

regarding which the ALJ found Dismuke's testimony not fully credible. See App. 247

(finding Dismuke's allegations "not entirely credible and [] somewhat exaggerated in

light of the reports of the treating and examining practitioners"). Because a hypothetical

must only include impairments that are supported by the medical record, Rutherford v.

Barnhart, 399 F.3d 546, 554 (3d Cir. 2005), and because the ALJ reasonably determined

that Dismuke's additional assertions were not supported by the record, Burns v. Barnhart,

312 F.3d 113, 129-30 (3d Cir. 2002) (deferring to the ALJ's credibility findings in light of

contradictory testimony and a lack of supporting medical evidence), we find that the ALJ

did not err in declining to rely on the vocational expert's response to Dismuke's

hypothetical.

Thus, we find that the ALJ properly calculated Dismuke's residual functional

capacity and sustained his burden at step five of the sequential evaluation.[1]

V.

For the foregoing reasons, we will affirm the District Court's judgment.

---

[1] Dismuke also argues that the ALJ committed legal errors in evaluating the evidence, and that the District Court's decision is contrary to the Chenery rule. See SEC v. Chenery, 332 U.S. 194, 196 (1947) (holding that a reviewing court must judge the propriety of an administrative decision solely on the grounds invoked by the agency, and if those grounds are inadequate or improper, the court cannot affirm the agency's decision). Again, we disagree. For the aforementioned reasons, we believe that the ALJ applied the law accurately and the District Court correctly concluded that substantial evidence supports the ALJ's decision.